[No. B237718. Second Dist., Div. Eight. Mar. 29, 2013.]

CONEJO WELLNESS CENTER, INC., Plaintiff, Cross-defendant and Appellant, v.
CITY OF AGOURA HILLS, Defendant, Cross-complainant and Respondent.

1538

COUNSEL

Arthur D. Hodge for Plaintiff, Cross-defendant and Appellant.

Candice K. Lee, City Attorney; Richards, Watson & Gershon and T. Peter Pierce for Defendant, Cross-complainant and Respondent.

OPINION

SORTINO, J.*—

## INTRODUCTION

Appellant Conejo Wellness Center, Inc. (Conejo), is located in the City of Agoura Hills. Conejo is a California cooperative corporation that operates as

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

a nonprofit collective engaged in the distribution of medical marijuana to its members. Respondent is the City of Agoura Hills (Agoura).

In the court below, Conejo filed a complaint which sought injunctive and declaratory relief against Agoura based on two Agoura municipal ordinances: (1) ordinance No. 08-355, which expressly bans medical marijuana dispensaries as defined therein, and (2) ordinance No. 10-379, which amends the Agoura Hills Municipal Code (AHMC) in various ways that affect medical marijuana dispensaries. Conejo's complaint alleged eight causes of action: (1) enactment of No. 10-379 did not comply with section 65853 of the Government Code and the ordinance is therefore void; (2) No. 10-379 violates the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.); (3) both ordinances are preempted by California law, specifically by the Compassionate Use Act of 1996 (CUA; Health & Saf. Code, § 11362.5) and the Medical Marijuana Program Act of 2003 (MMPA; Health & Saf. Code, § 11362.7 et seq.); (4) No. 10-379 violates, and specific conduct by Agoura violated, state constitutional rights to substantive due process, procedural due process, and equal protection of the laws; (5) both ordinances violate state constitutional rights to privacy and freedom of association; (6) No. 10-379 violates state and federal constitutional prohibitions against ex post facto laws and laws which impair vested contract rights; (7) for a declaration that No. 10-379 is unconstitutional and an injunction prohibiting its further enforcement; and (8) for a writ of mandate (Code Civ. Proc., § 1085) compelling Agoura to permit Conejo to operate as a nonprofit medical marijuana collective consistent with California law.

In response to Conejo's complaint, Agoura filed a cross-complaint which sought both declaratory and injunctive relief. The cross-complaint initially alleged four causes of action for a permanent injunction to abate Conejo's continued operation as a public nuisance, based upon the following: (1) Conejo's failure to obtain proper permits and approvals from Agoura; (2) Conejo's failure to obtain a valid business license from the County of Los Angeles; (3) Conejo's violation of ordinance No. 08-355; and (4) Conejo's violation of ordinance No. 10-379. Agoura's fifth cause of action sought declaratory relief based upon the first four causes of action.

The trial court dismissed Conejo's second cause of action on procedural grounds, a ruling Conejo does not appeal. Subsequently, the court granted Agoura's motion for summary judgment on the balance of the complaint. The court also granted Agoura's motion for summary adjudication of the cross-complaint's third cause of action. Agoura then effectively dismissed the

balance of its cross-complaint.[1] Thereafter, the trial court entered judgment against Conejo on both its original complaint and Agoura's cross-complaint. As part of its judgment, the trial court permanently enjoined Conejo from "selling, providing, or otherwise making available marijuana at or from" its current location or any other location within Agoura.[2]

Conejo now appeals from the trial court's orders granting summary judgment and summary adjudication, and from its final judgment enjoining Conejo's further distribution of marijuana.

## BACKGROUND

The issues raised by this appeal involve the interplay of various state and local laws, enacted at various times. What follows then, is not only a statement of the facts established by the record below, but also a chronology of the state and local laws involved.

### 1. *Agoura's Land Use Ordinances Prior to the CUA and MMPA*

At all times relevant to the issues raised by this appeal, Conejo operated in an area described by Agoura's zoning laws as the Business Park-Manufacturing District (Manufacturing District).

In 1987, Agoura adopted ordinance No. 120, which amended the AHMC and enacted a series of land use statutes. Of relevance here, the ordinance enacted AHMC former sections 9310.200 and 9310.220, which established a commercial use table identifying the specific land uses permitted within the Manufacturing District, as well as within other commercial districts in Agoura. Former section 9310.210 of the ordinance prohibited any use not expressly authorized by the commercial use table or interpreted by the city

---

[1] After the trial court's ruling on the motion for summary adjudication, Agoura dismissed the cross-complaint's first, second, and fourth causes of action against Conejo, and then obtained judgment on its cross-complaint. Agoura inadvertently neglected to dismiss the cross-complaint's fifth cause of action. Agoura contends, given the record as a whole, that this is a technical error and does not affect the appeal either procedurally or substantively. Conejo does not expressly disagree. In the interest of judicial efficiency, we will accept Agoura's concession and reach the merits of the appeal. We also, though, order Agoura to request dismissal of its fifth cause of action upon filing of the remittitur in this case.

[2] Conejo's complaint also alleged its eight causes of action against the Los Angeles County Sheriff's Department (Sheriff), which acts, pursuant to contract, as Agoura's municipal law enforcement agency. Although not reflected in the record, the Sheriff's demurrer, according to Agoura, was sustained without leave to amend. The Sheriff is therefore not a party to this appeal. Agoura's cross-complaint also alleged its five causes of action against Conejo's landlord, the Executive Center of Simi Valley, LLC (Executive). Agoura voluntarily dismissed the case against Executive after the trial court rulings at issue in this appeal. Executive, like the Sheriff, is therefore not a party to this appeal.

planning commission to be similar to an authorized use. The commercial use table enacted as part of ordinance No. 120 did not list "medical marijuana dispensary" as a permitted use within the Manufacturing District, or any other commercial district. In their briefs, neither side contends that the city planning commission at any time interpreted "medical marijuana dispensary" to be similar to an expressly authorized use.

While this litigation was pending in the trial court, Agoura adopted ordinance No. 11-388, which renumbered and amended Agoura's land use statutes, and also enacted a new commercial use table. The changes, however, are not material to this litigation: the new commercial use table does not list "medical marijuana dispensary" as a permitted use within any commercial district and the new ordinance still prohibits any use not expressly authorized or interpreted as similar to an authorized use by the city planning commission. (See generally AHMC, §§ 9311–9312.3; see also §§ 9381–9382.2.)

### 2. *The CUA*

In 1996, California voters approved Proposition 215, known as the CUA, which is codified as Health and Safety Code section 11362.5.[3] The CUA provides that no physician shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes. (§ 11362.5, subd. (c).) The CUA also immunizes specific persons from specific prosecutions under the Health and Safety Code: "Section 11357, relating to the possession of marijuana, and [s]ection 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d).) The CUA defines "primary caregiver" as the person designated by the patient "who has consistently assumed responsibility for the [patient's] housing, health, or safety." (§ 11362.5, subd. (e).)

The CUA also provides that "[n]othing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes." (§ 11362.5, subd. (b)(2).) It also expressly "encourage[s] the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana." (§ 11362.5, subd. (b)(1)(C).)

---

[3] All future statutory references are to the Health and Safety Code unless otherwise designated.

### 3. *The MMPA*

In 2003, the California Legislature enacted the MMPA, codified in sections 11362.7 through 11362.83. The MMPA was passed, in part, to clarify the scope of the CUA and promote its uniform application "among the counties within the state." (Stats. 2003, ch. 875, § 1, p. 6422.)

To accomplish these goals, the MMPA empowered the State Department of Health Care Services (now California Department of Public Health) to create a voluntary program for the issuance of identification cards to "qualified patients." (§ 11362.71, subd. (a)(1).) "Qualified patients" are defined as those persons "entitled to the protections" of the CUA. (§ 11362.7, subd. (f).)

The MMPA then grants immunity from prosecution to an expanded list of offenses so long as the underlying conduct involves medical marijuana use: "Subject to the requirements of this article, the individuals specified in subdivision (b) shall not be subject, *on that sole basis*, to criminal liability under [s]ection[s] 11357 [(possession)], 11358 [(cultivation)], 11359 [(possession for sale)], 11360 [(sales)], 11366 [(maintaining a place)], 11366.5 [(providing a place)], or 11570 [(nuisance)]." (§ 11362.765, subd. (a), italics added.) The MMPA establishes three groups of persons entitled to the immunity described above: (1) qualified patients, persons with identification cards, and the primary caregivers of such persons; (2) individuals who assist the aforementioned patients, cardholders, and primary caregivers in administering medical marijuana; and (3) individuals who assist patients, cardholders, and primary caregivers in acquiring the skills necessary to cultivate or administer medical marijuana. (§ 11362.765, subd. (b).)

Significantly, the MMPA also expressly extends immunity from prosecution under the same enumerated Health and Safety Code sections to certain "collective" conduct: "Qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions under [s]ection[s] 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570." (§ 11362.775.)

The MMPA, as originally enacted, also affirmatively provided that "[n]othing in this article shall prevent a city or other local governing body from adopting and enforcing laws consistent with this article." (Stats. 2003, ch. 875, § 2, p. 6424 [former § 11362.83].) The Legislature amended this section, effective January 1, 2012, to read, in full, as follows: "Nothing in this article shall prevent a city or other local governing body from adopting and

enforcing any of the following: [¶] (a) Adopting local ordinances that regulate the location, operation, or establishment of a medical marijuana cooperative or collective. [¶] (b) *The civil and criminal enforcement of local ordinances described in subdivision (a).* [¶] (c) Enacting other laws consistent with this article." (§ 11362.83, italics added as amended by Stats. 2011, ch. 196, § 1.)

### 4. *Conejo's Creation and Operation*

Conejo began operation in April 2006 and incorporated as a cooperative in June 2006. Conejo operates as a nonprofit collective that maintains quantities of medical marijuana at its location for distribution to its members.

### 5. *Ordinance No. 08-355*

On September 10, 2008, Agoura adopted ordinance No. 08-355, which added section 9660 to article IX of the AHMC. Section 9660, subdivision C, expressly states that operation of a "medical marijuana dispensary is not a permitted use anywhere in the city." As if to emphasize the point, the section further provides that "[i]t shall be unlawful for any person or entity to own, manage, establish, conduct, or operate, or permit to be established, conducted, operated, owned or managed as a landlord or property owner, any medical marijuana dispensary, or to participate as a landlord, owner, employee, contractor, agent or volunteer, or in any other manner or capacity, in any medical marijuana dispensary, in the city." AHMC section 9660, subdivision B(1), defines a medical marijuana dispensary: "Medical marijuana dispensary means any location, structure, facility, vehicle, store, co-op, residence, or similar facility used, in full or part, as a place at or in which marijuana is sold, traded, exchanged, bartered for in any way, made available, located, stored, placed, or cultivated, including any of the foregoing if used in connection with the delivery of marijuana." (Italics omitted.)

Other preexisting sections contained in article IX provide the enforcement mechanism for AHMC section 9660. Section 9842 deems "any condition caused [by] or permitted to exist in violation of any of the provisions of [article IX]" a public nuisance. Section 9844 makes any violation of article IX a misdemeanor punishable by six months in jail or a $1,000 fine or both.

### 6. *Agoura's Conduct After Enactment of Ordinance No. 08-355*

Prior to 2011, Agoura did not require nonprofit entities to obtain a city business registration permit. Conejo, nevertheless, applied for a 2010 business registration permit on December 14, 2009, and submitted the $35 application fee the same day. Agoura did not formally act upon Conejo's

application until February 1, 2011, when it rejected the application and refunded the application fee.

In January 2010, Agoura commenced an investigation of Conejo that ultimately became a code enforcement investigation. On October 14, 2010, the Sheriff executed a search warrant at Conejo's location. Deputies seized marijuana, paraphernalia, and paperwork. Agoura city officials, including the assistant to the city manager, the city prosecutor, and a code enforcement officer, arrived at the location at some point during execution of the search warrant.

In June 2010, Conejo requested a building permit to expand its location. Agoura's assistant to the city manager rejected the request at the counter because Conejo's business "was a nonconforming use."

### 7. Ordinance No. 10-379

On October 27, 2010, Agoura adopted ordinance No. 10-379, which added section 4125 to article IV of the AHMC. Section 4125 expressly prohibits any medical marijuana dispensary, as defined in section 9660, from receiving "compensation" for the distribution of medical marijuana.

Ordinance No. 10-379 also made a number of changes to chapter 8 of article VI of the AHMC: (1) it amended section 6800 to include nonprofit entities within the definition of a "business"; (2) it amended section 6801 to require an annual business registration permit prior to the operation of "any business"; (3) it added section 6815, which expressly prohibits operation of a business without a valid business registration permit; (4) it added section 6806, which prohibits the city manager from issuing a business registration permit to "[any] business [that] is not a permitted use" under the AHMC, and further identifies a section 9660 medical marijuana dispensary to be a nonpermitted use; and (5) it added section 6816 which prohibits business advertising of any sort until a valid business registration permit is obtained.

Finally, ordinance No. 10-379 added enforcement provisions for violations of sections contained in chapter 8: AHMC section 6822 deems any "condition caused or permitted to exist" in violation of chapter 8 a public nuisance and section 6823 makes any violation a misdemeanor punishable by six months in the county jail, a $1,000 fine, or both.

### 8. Agoura's Conduct After Enactment of Ordinance No. 10-379

On November 12, 2010, Conejo applied for a 2011 business registration permit. The assistant to the city manager refused to accept the application at the counter because a medical marijuana dispensary was not a permitted use under the AHMC.

### 9. *AHMC Section 1200*

As mentioned above, article IX and chapter 8 of article VI of the AHMC contain enforcement provisions for violations of their sections. Section 1200 of article I of the AHMC adds to those specific enforcement provisions by creating a general enforcement provision applicable to the AHMC as a whole: subdivision (a) of section 1200 makes any violation of the AHMC generally a misdemeanor subject to six months in jail, a $1,000 fine, or both, while subdivision (c) deems any "condition caused or permitted to exist" in violation of the AHMC a public nuisance subject to summary abatement.

## DISCUSSION

### I. *Standard of Review*

Summary judgment or summary adjudication is appropriate when no triable issue of material fact remains and the moving party is entitled to judgment or adjudication as a matter of law. (*Rickards v. United Parcel Service, Inc.* (2012) 206 Cal.App.4th 1523, 1525–1526 [142 Cal.Rptr.3d 916] [summary judgment]; *Pacific Gas & Electric Co. v. City and County of San Francisco* (2012) 206 Cal.App.4th 897, 910 [142 Cal.Rptr.3d 190] [summary adjudication]; see Code Civ. Proc., § 437c, subds. (c), (f)(1).) A trial court's decision on a motion for summary judgment or summary adjudication is reviewed de novo, viewing the evidence in the light most favorable to the nonmoving party. (*Rickards, supra*, at p. 1526; *Pacific Gas & Electric, supra*, at p. 910.)

In the immediate case, the facts, as described above or elsewhere in this opinion, are not disputed by the parties. This case presents pure questions of law based upon undisputed facts.

### II. *First Cause of Action: Government Code Section 65853*

Conejo contends, Agoura concedes, and we agree that ordinance No. 08-355 is a zoning ordinance because it bans medical marijuana dispensaries by expressly classifying them as a nonpermitted use anywhere in the city. In its first cause of action, Conejo asserts that ordinance No. 10-379 is also a zoning ordinance or, alternatively, that it amends a zoning ordinance (No. 08-355), and for either reason is therefore void because Agoura did not comply with Government Code section 65853, which sets forth specific notice and other requirements for enactments or amendments of zoning ordinances. Agoura does not contend that it complied with section 65853, but argues instead that section 65853 does not apply because No. 10-379 is

neither a zoning ordinance nor an amendment of a zoning ordinance. We agree that section 65853 is inapplicable to No. 10-379.

### A. *Government Code Section 65853 et seq.*

Government Code section 65853 provides, in pertinent part: "A zoning ordinance or an amendment to a zoning ordinance, which amendment changes any property from one zone to another or imposes any regulation listed in [s]ection 65850 not theretofore imposed or removes or modifies any such regulation theretofore imposed shall be adopted in the manner set forth in [s]ections 65854 to 65857, inclusive."

■ Government Code section 65850, referred to in section 65853, confers legislative power upon counties and cities to do the following: (1) regulate the use of buildings and land between industry, business, and residences; (2) regulate signs and billboards; (3) regulate the size of buildings, the size of lots, the percentage of a lot to be occupied by a building, and the intensity of land use; (4) establish requirements for offstreet parking and loading; (5) establish and maintain building setback lines; and (6) create civic districts, public parks, and public grounds. (§ 65850, subds. (a)–(f).) ■ Sections 65854 through 65857, also referenced in section 65853, require a noticed public hearing before the local planning commission, written recommendations from the planning commission to the local legislative body, a noticed public hearing before the legislative body, and formal approval, disapproval, or modification of the recommendations by the legislative body, before a municipality may enact or amend a zoning ordinance encompassed by section 65853.

### B. *Applicability of Government Code Section 65853 to Ordinance No. 10-379*

■ Of relevance to Conejo's Government Code claim, ordinance No. 10-379 does seven things: (1) it expressly prohibits a medical marijuana dispensary from receiving compensation (AHMC, § 4125); (2) it redefines "business" to include nonprofit entities (AHMC, § 6800); (3) it requires all businesses to obtain a business registration permit (AHMC, § 6801); (4) it expressly prohibits a business from operating without a business registration permit (AHMC, § 6815); (5) it prohibits the city manager from issuing a business registration permit if the business involves a nonpermitted use (AHMC, § 6806); (6) it expressly identifies a medical marijuana dispensary as a nonpermitted use (AHMC, § 6806); and (7) it prohibits business advertising "by any means or medium" prior to obtaining a business registration permit (AHMC, § 6816). None of these provisions move property from one zone to another. Moreover, none of these provisions impose regulations

"not theretofore imposed" or modify regulations "theretofore imposed" that are subjects of the powers listed in Government Code section 65850. (Gov. Code, § 65853.) Consequently, on its face ordinance No. 10-379 simply does not fall within the scope of Government Code section 65853.

Conejo attempts to get around this conclusion through three arguments. First, Conejo seems to contend that insofar as ordinance No. 10-379 prohibits a dispensary from receiving compensation, it modifies or amends the definition of a medical marijuana dispensary established by ordinance No. 08-355 (AHMC, § 9660, subd. B(1)). Ordinance No. 08-355, Conejo argues, bans only "for profit" dispensaries while No. 10-379 bans nonprofit dispensaries as well. Thus, Conejo concludes, No. 10-379 modifies a regulation related to the use of buildings and land as between industry, business, and residences, bringing it within the scope of Government Code section 65850, subdivision (a), and thus also within the scope of Government Code section 65853.

■ We disagree. Ordinance No. 10-379 does not redefine medical marijuana dispensaries for zoning purposes. Ordinance No. 08-355, as originally enacted, prohibits the use of "any location . . . as a place at or in which marijuana is sold, traded, exchanged, bartered for in any way, *made available, located, stored, placed, or cultivated*, including any of the foregoing if used in connection with the delivery of marijuana." (AHMC, § 9660, subd. B(1), italics added.) As the italicized portion makes clear, No. 08-355, from its inception, banned all dispensaries, whether or not for profit. Ordinance No. 10-379 does not in any way change or add to that fact. What No. 10-379 does is expressly prohibit an already banned dispensary from receiving compensation, an issue not addressed by No. 08-355 and an issue unrelated to the subjects encompassed by Government Code sections 65850 and 65853. In other words, a medical marijuana dispensary violates No. 08-355 by its existence, because Agoura, for zoning purposes, has classified dispensaries as a nonpermitted use. A medical marijuana dispensary violates No. 10-379 not by its existence, but by accepting compensation for its services.

Conejo next argues that ordinance No. 10-379 comes within the scope of Government Code sections 65850 and 65853 because it redefines a "business" to include nonprofit entities such as itself, requires all businesses to obtain a business registration permit, prohibits the city manager from issuing such permits for a nonpermitted use, and expressly identifies medical marijuana dispensaries as nonpermitted uses. Although unclear, the argument seems to be that No. 10-379, by declaring dispensaries to be nonpermitted uses and therefore ineligible to obtain the business registration permit required of even nonprofit entities, goes beyond a business licensing scheme and becomes a zoning ordinance because it effectively prohibits nonprofit

dispensaries such as Conejo. Thus, Conejo apparently concludes, this portion of No. 10-379 imposes or modifies a land use regulation listed in section 65850, bringing it within the scope of section 65853.

█ Again, we disagree with Conejo's conclusion. Requiring a business registration permit of all "business" entities, whether or not for profit, does not impose or amend any regulation within the scope of Government Code section 65850. Similarly, allowing the city manager to reject an application for any *already* nonpermitted use does not implicate any power listed in section 65850. Finally, even though ordinance No. 10-379 expressly declares dispensaries to be a nonpermitted use, it does not become, as required by section 65853, a zoning amendment that "imposes any regulation . . . not theretofore imposed or [that] removes or modifies any such regulation theretofore imposed": Ordinance No. 08-355 had already declared dispensaries a nonpermitted use, and No. 10-379's restatement of that fact does not add a regulation that did not already exist or modify an existing one.

█ Conejo's final argument is likewise not persuasive. Conejo simply concludes, without any analysis whatsoever, that because ordinance No. 10-379 prohibits a business from advertising "by any means or medium" before obtaining a registration permit, it necessarily regulates signs and billboards within the meaning of Government Code section 65850, subdivision (b). In connection with this argument, we agree with Agoura: an ordinance that restricts advertising generally to entities that have obtained a required local permit does not become a sign or billboard regulation in the context of zoning powers because it incidentally may affect those two advertising mediums.

### III. *Second Cause of Action: CEQA*

As previously mentioned, on appeal Conejo does not challenge the trial court's dismissal of its second cause of action. We therefore do not address this issue.

### IV. *Third Cause of Action: Preemption by State Law*

In its third cause of action, Conejo contends that the CUA and the MMPA preempt ordinance No. 08-355, parts of ordinance No. 10-379, and the various AHMC provisions that make violation of these ordinances either misdemeanors or public nuisances subject to abatement. Conejo also asserts preemption as an affirmative defense to the third cause of action alleged in Agoura's cross-complaint.

### A. *The Law of Preemption*

■ Article XI, section 7 of the California Constitution grants local governments plenary police powers: "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Subject to the limitation that it not act contrary to state law, the police power of a county or city is as broad as the police power exercised by the state Legislature itself. (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 140 [130 Cal.Rptr. 465, 550 P.2d 1001]; accord, *Candid Enterprises, Inc. v. Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876] (*Candid Enterprises*).)

■ Otherwise valid local legislation that conflicts with state law is preempted and therefore void. (*Candid Enterprises, supra,* 39 Cal.3d at p. 885; accord, *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1242 [63 Cal.Rptr.3d 398, 163 P.3d 89] (*Action Apartment*).) A conflict causing preemption by state law can occur in three different ways: the local ordinance (1) duplicates state law; (2) contradicts state law; or (3) enters an area or field fully occupied by state law. (*People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 484 [204 Cal.Rptr. 897, 683 P.2d 1150], questioned on another ground in *Professional Lawn Care Assn. v. Village of Milford* (6th Cir. 1990) 909 F.2d 929, 933; accord, *Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534] (*Sherwin-Williams*).)

■ Local legislation is duplicative when it is coextensive with state law. (*Sherwin-Williams, supra,* 4 Cal.4th at p. 897.) ■ It is contradictory when it is "inimical to or cannot be reconciled with state law." (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1068 [63 Cal.Rptr.3d 67, 162 P.3d 583]; accord, *Action Apartment, supra,* 41 Cal.4th at p. 1242; *Sherwin-Williams, supra,* at p. 898.)

■ Local legislation enters an area or field that is " 'fully occupied' " by state law when the Legislature has either (1) *expressly* manifested its intent to fully occupy the area or (2) *impliedly* has done so. (*Sherwin-Williams, supra,* 4 Cal.4th at p. 898.) When evaluating the possibility of *implied* preemption by occupation, courts look at whether one of three possible indicia exists: " '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the

state outweighs the possible benefit to the municipality.' [Citations.]" (*People ex rel. Deukmejian v. County of Mendocino, supra,* 36 Cal.3d at p. 485; accord, *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1252 [23 Cal.Rptr.3d 453, 104 P.3d 813]; see *Sherwin-Williams, supra,* 4 Cal.4th at p. 898.)

▮ The party claiming that state law preempts a local ordinance bears the burden of demonstrating preemption. (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 [45 Cal.Rptr.3d 21, 136 P.3d 821].) Absent a clear indication of legislative intent to preempt, courts presume that local regulation in areas of traditional local concern is not preempted by state law. (*Ibid.*) Whether local ordinances are preempted by state statutes is a question of law subject to de novo review. (*County of Los Angeles v. Hill* (2011) 192 Cal.App.4th 861, 867 [121 Cal.Rptr.3d 722] (*Hill*).)

Conejo's opening brief on the issue of preemption is not altogether clear. Conejo, though, appears to argue that the CUA and MMPA preempt Agoura's ordinances in various ways. First, Conejo contends that ordinance No. 08-355 *expressly* bans collective or cooperative medical marijuana dispensaries specifically allowed by the CUA and MMPA. Next, Conejo argues that ordinance No. 10-379 *functionally* bans such dispensaries in two ways: (1) by requiring that even nonprofit entities obtain a business registration permit and then categorically prohibiting the city manager from issuing permits to dispensaries and (2) by prohibiting any compensation whatsoever—including simple reimbursement for costs expended—to dispensaries. Finally, Conejo argues that the CUA and MMPA preempt the AHMC to the extent the AHMC punishes operation of a dispensary through sections that criminalize or deem a nuisance any violation of No. 08-355 or No. 10-379. Reduced to their essence, Conejo's arguments can be summarized as follows: (1) the CUA and MMPA create a state right to cultivate, distribute, or otherwise obtain marijuana collectively, and thereafter to possess and use it, for medical purposes, and (2) the AHMC, through various provisions, conflicts with that right by prohibiting and/or punishing its exercise.

Preliminarily, we agree with Agoura that the definition of a medical marijuana dispensary in ordinance No. 08-355 (AHMC, § 9660, subd. B(1)) is broad enough to include Conejo. We also find that the definition of a business, as amended by ordinance No. 10-379 (AHMC, § 6800), is also sufficiently broad to include Conejo. Conejo does not contest these points in its opening brief. Thus, it is not disputed that both ordinances either directly or indirectly prohibit Conejo's operation. Based on the analysis that follows, we nevertheless reject Conejo's argument because its initial premise is incorrect: neither the CUA nor the MMPA creates the right Conejo claims.

### B. *Preemption by the CUA*

█ The CUA, by its express terms, is a limited statute. It simply gives only qualified patients and their primary caregivers a defense to the state crimes of marijuana possession and cultivation when that possession or cultivation is for medical purposes based upon a physician's written or oral recommendation. (*Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 926 [70 Cal.Rptr.3d 382, 174 P.3d 200] (*Ross*); *People v. Mower* (2002) 28 Cal.4th 457, 470–471 [122 Cal.Rptr.2d 326, 49 P.3d 1067].) The CUA, notwithstanding the statement in its introductory preamble that its purpose is to ensure that " 'seriously ill Californians have the right to obtain and use marijuana for medical purposes . . . ,' " does not create a broad right to use marijuana without hindrance or inconvenience. (*Ross, supra*, at p. 928, quoting § 11362.5, subd. (b)(1)(A).) The only "right" it creates is the right of a qualified patient or primary caregiver to possess or cultivate medical marijuana without thereby becoming subject to *criminal* prosecution under sections 11357 and 11358. (*Ross*, at p. 929.)

█ Division Two of this court succinctly summarized the extremely limited scope of the CUA, in the context of a temporary local moratorium on medical marijuana dispensaries: "The nature of the right to use marijuana created by the CUA has been examined in several California court decisions. In *People v. Mower*[, *supra*,] 28 Cal.4th 457 . . . , the California Supreme Court rejected the defendant's argument that the CUA provided an absolute defense to arrest and prosecution for certain marijuana offenses and concluded that the statute provides a limited defense from prosecution for cultivation and possession of marijuana. [Citation.] The defense accorded by the CUA is limited to 'patients and primary caregivers only, to prosecution for only two criminal offenses: [Health and Safety Code] section 11357 (possession) and section 11358 (cultivation).' [Citation.] In view of the statute's narrow reach, 'courts have consistently resisted attempts by advocates of medical marijuana to broaden the scope of these limited specific exceptions.' [Citation.] For example, courts have determined that the CUA did not create 'a constitutional right to obtain marijuana' [citation], and have refused to expand the scope of the CUA to allow the sale or nonprofit distribution of marijuana by medical marijuana cooperatives." (*City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1170–1171 [100 Cal.Rptr.3d 1] (*Kruse*).)

█ The CUA, then, does not create a "right" to cultivate, distribute, or otherwise obtain medical marijuana collectively. Rather, it simply provides two specifically identified groups of persons with a limited defense to two

specific state criminal statutes. It does not mention, let alone authorize, medical marijuana collectives or dispensaries. It does not expressly prohibit further legislation in the area of medical marijuana use and, as we have already observed, expressly acknowledges the potential validity of other legislation intended to prevent or regulate related conduct that might endanger the general citizenry. (§ 11362.5, subd. (b)(2) ["Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes."].)

■ Based on the above, we find none of the three possible types of preemption. The referenced Agoura ordinances are not coextensive with the CUA and therefore do not duplicate it. Neither do they contradict the CUA: since the CUA does not create a right to cultivate, distribute, or otherwise obtain medical marijuana collectively, local prohibition of such conduct does not contradict it. Finally, given its limited scope and express recognition of the validity of additional legislation in the area, the CUA was not intended explicitly or implicitly to occupy fully the entire field of medical marijuana use. (*Kruse, supra,* 177 Cal.App.4th at p. 1175; cf. *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 769 [33 Cal.Rptr.3d 859] [the CUA did not contemplate the collective cultivation or distribution of medical marijuana].)

## C. *Preemption by the MMPA*

■ As mentioned above, the MMPA significantly expands the list of state offenses to which the defense of medical marijuana use applies, and specifically includes sales of marijuana. (§ 11362.765, subd. (a).)[4] It also expands the groups of persons to whom the defense is available beyond qualified patients and their primary caregivers to include holders of identification cards and persons who assist members of these three groups in administering medical marijuana or acquiring the skills necessary to cultivate

---

[4] Section 11362.765, subdivision (a), also extends immunity to "criminal liability" for nuisance actions litigated pursuant to section 11570. Section 11570, the so-called "drug house" abatement law, deems any structure used for the unlawful manufacture, storing, or distribution of controlled substances a nuisance per se. (*Lew v. Superior Court* (1993) 20 Cal.App.4th 866, 871–872 [25 Cal.Rptr.2d 42].) Only civil remedies, however, including abatement, are available to enforce section 11570. (See *Lew,* at pp. 871–872.) We need not address this apparent inconsistency between the MMPA and section 11570: Agoura's allegation that Conejo is a public nuisance per se is based not on section 11570, but on Agoura's local ordinances declaring conditions caused by or permitted to exist in violation of the AHMC to be a public nuisance. The MMPA, by its express terms, does not provide immunity for abatement actions brought pursuant to local ordinances and, for the reasons stated later in this opinion, does not preempt local authorities from enforcing dispensary bans through such ordinances.

or administer medical marijuana. (§ 11362.765, subd. (b).) Finally, and perhaps most significantly for the purpose of this case, the MMPA extends immunity from prosecution under the listed penal statutes to qualified patients, identification cardholders, and their primary caregivers who "collectively or cooperatively . . . cultivate marijuana for medical purposes." (§ 11362.775.)

Though the MMPA can be seen as an expansion of the CUA in some respects, the two are not qualitatively different. Like the CUA, the MMPA provides only limited criminal immunity for specified offenses to specific groups of people for specific actions. (*People v. Mentch* (2008) 45 Cal.4th 274, 290–291 [85 Cal.Rptr.3d 480, 195 P.3d 1061] (*Mentch*); *Kruse, supra*, 177 Cal.App.4th at p. 1175.) The immunity created by the MMPA is available only if the sole basis of the prosecution is conduct specifically described in the MMPA. (See §§ 11362.765, subd. (a), 11362.775.) The MMPA simply does not provide blanket immunity to the specified groups of people under all circumstances. (See *Mentch, supra*, at p. 292; *Hill, supra*, 192 Cal.App.4th at p. 869; see also *Kruse, supra*, at p. 1175.)

Furthermore, the MMPA does not expressly forbid local regulation in the area of medical marijuana use and, in fact, expressly contemplates it. As mentioned earlier, the MMPA in its original form provided that "[n]othing in this article shall prevent a city or other local governing body from adopting and enforcing laws consistent with this article." (Stats. 2003, ch. 875, § 2, p. 6424 [former § 11362.83].) The Legislature's recent amendment of the MMPA, effective January 1, 2012, eliminates any doubt regarding the propriety of local legislation: the MMPA now expressly permits "civil and criminal enforcement" of local ordinances "that regulate the location, operation, or establishment of a medical marijuana cooperative or collective." (§ 11362.83, subds. (b), (a).)

This change to the MMPA, though it postdates the relevant proceedings below, remains relevant to our decision. Prior to the amendment of section 11362.83, the issue of regulating medical marijuana collectives or dispensaries through local civil and criminal ordinances had been raised in various appellate decisions. (E.g., *Hill, supra*, 192 Cal.App.4th at pp. 866–870; *Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 754 [115 Cal.Rptr.3d 89]; *Kruse, supra*, 177 Cal.App.4th at pp. 1167–1177; *City of Corona v. Naulls* (2008) 166 Cal.App.4th 418, 425 [83 Cal.Rptr.3d 1].) When enacting new legislation or amendments to existing statutes, the Legislature is presumed to be aware of relevant appellate court decisions. (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142,

1155 [278 Cal.Rptr. 614, 805 P.2d 873] (*Harris*), superseded by statute on another ground as stated in *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 672 [94 Cal.Rptr.3d 685, 208 P.3d 623].)

■ The amendment to section 11362.83 expressly allowing local civil and criminal enforcement is consistent with the broad language of section 11362.83 as originally enacted and was added after the appellate decisions referenced above. We conclude that the amendment was the Legislature's response to these decisions, the purpose of which was to expressly clarify what the statute had always implicitly allowed. (See *Harris, supra*, 52 Cal.3d at p. 1156 ["In the area of statutory construction, an examination of what the Legislature has done (as opposed to what it has left undone) is generally the more fruitful inquiry."]; *Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 735 [180 Cal.Rptr. 496, 640 P.2d 115] [adding statutory language which is consistent with earlier case law construing the statute amounts to "legislative endorsement" of that construction].)

■ This legislative and judicial history compels a conclusion that none of the three bases for preemption exist here. The Agoura ordinances are not coextensive with and therefore do not duplicate the MMPA. Further, the Agoura ordinances do not contradict the MMPA: although the MMPA immunizes qualified patients, identification cardholders, and primary caregivers from prosecution for violations of the listed state statutes based on cooperative or collective cultivation of medical marijuana, and further immunizes persons who assist members of these three groups in administering medical marijuana or in acquiring the skills necessary to cultivate or administer medical marijuana, it does not prohibit Agoura's ban of dispensaries. Conejo's argument misconstrues what the MMPA, by its express terms, actually does. The MMPA does not differ in kind from the CUA. As stated earlier, although it further implements and expands upon the CUA, it remains a statute that provides limited criminal immunities to specific groups of people under a narrow set of circumstances. (See *Mentch, supra*, 45 Cal.4th at p. 290; *Kruse, supra*, 177 Cal.App.4th at p. 1175.) Nowhere does the language of its operative terms command or even expressly allow the existence of collectives or dispensaries. Its operative terms do not affirmatively create any right, constitutional or otherwise, to cultivate or distribute medical marijuana through collectives or dispensaries. The MMPA does not preclude local action except in the area of "according qualified persons affirmative defenses to enumerated penal sanctions." (*Kruse, supra*, at p. 1176.) The MMPA simply does not prohibit the express or functional ban

of dispensaries created by local ordinances such as those adopted by Agoura. In the language of preemption, the ordinances do not conflict with the MMPA.[5]

 *Nordyke v. King* (2002) 27 Cal.4th 875, 883–884 [118 Cal.Rptr.2d 761, 44 P.3d 133] (*Nordyke*) is instructive. In *Nordyke*, Alameda County enacted an ordinance which banned the possession of firearms on county property. (*Id.* at pp. 880–881.) One of the primary consequences of the ordinance was the effective prohibition of gun trade shows on county property. (*Id.* at p. 881.) Plaintiffs, who were gun show promoters, sought to enjoin the ordinance, relying in part on Penal Code section 171b. Subject to certain exceptions, section 171b, subdivision (a), generally prohibits possession of firearms in state or local public buildings. Section 171b, subdivision (b)(7), exempts from the prohibition persons bringing firearms for lawful sale or trade into a gun show otherwise lawful under state law. (*Nordyke*, at p. 883.) Plaintiffs argued that subdivision (b)(7) preempted the county from outlawing guns at public buildings being used for an otherwise lawful gun show. (*Nordyke*, at p. 884.) The Supreme Court responded in no uncertain terms: "We disagree. The provision [(Pen. Code, § 171b, subd. (b)(7))] merely exempts gun shows from the state *criminal* prohibition on possessing guns in public buildings, thereby permitting local government entities to authorize such shows. It does not *mandate* that local government entities permit such a use, and the Nordykes cite no legislative history indicating otherwise." (*Nordyke, supra,* 27 Cal.4th at p. 884, first italics added.) In the immediate case, the MMPA similarly exempts certain persons from prosecution for certain state offenses based solely on the collective cultivation of medical marijuana. It does not affirmatively mandate that any local government allow such activity or the collective or cooperative *distribution* of marijuana so cultivated.

Moreover, we need not undertake the legislative history analysis suggested by *Nordyke* because the language of the MMPA is clear. (See *Hoechst*

---

[5] We note that if either the MMPA or the CUA affirmatively authorized cultivation, possession, or distribution of medical marijuana, by individuals or collectives, it would raise serious questions of federal preemption by the Controlled Substances Act (21 U.S.C. § 801 et seq.). The Controlled Substances Act defines marijuana as a schedule I drug, and prohibits any possession or use of marijuana except in the course of federally approved research projects. (*United States v. Oakland Cannabis Buyers' Cooperative* (2001) 532 U.S. 483, 489–490 [149 L.Ed.2d 722, 121 S.Ct. 1711].) A local statute that authorizes conduct prohibited by federal law is an "obstacle" to accomplishing federal objectives and is therefore preempted. (*Michigan Canners & Freezers v. Agricultural Bd.* (1984) 467 U.S. 461, 478 [81 L.Ed.2d 399, 104 S.Ct. 2518].) We need not decide this issue of preemption by federal law because, as we conclude in this part of our Discussion, neither the CUA nor the MMPA creates a right to possess, use, or distribute marijuana, individually or collectively.

*Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 519 [106 Cal.Rptr.2d 548, 22 P.3d 324]; see also *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) The MMPA may have expanded the offenses to which an affirmative defense may be raised and it may have expanded that defense to encompass collective conduct, but it does not, by its clear language, do anything more. We thus find no preemption by contradiction of Agoura's express or functional ban of medical marijuana dispensaries.

▆▆▆ Finally, the MMPA does not preempt by field occupation the Agoura ordinances. As mentioned earlier, the MMPA in both its original and amended form contemplates additional local regulation of medical marijuana. (Stats. 2003, ch. 875, § 2, p. 6424 [former § 11362.83]; § 11362.83, subd. (b).) By its own terms, then, the MMPA does not occupy the entire field of medical marijuana cultivation, distribution, or use. (See *Hill, supra,* 192 Cal.App.4th at p. 868; *Kruse, supra,* 177 Cal.App.4th at pp. 1175–1176; see also *People ex rel. Deukmejian v. County of Mendocino, supra,* 36 Cal.3d at p. 485 ["Preemption by implication of legislative intent may not be found when the Legislature has expressed its intent to permit local regulations."].)[6]

---

[6] In the preemption part of its opening brief, Conejo also argues that section 3 of ordinance No. 08-355 places Conejo outside the scope of the dispensary ban. Section 3 of the ordinance provides as follows: "No Conflict With Existing Law. This zoning ordinance shall in no way limit qualified *individuals'* right to possess, use or cultivate marijuana for *their own medicinal purposes* as is presently authorized by the laws of the State of California as set forth in the applicable provisions of the Health and Safety Code. Any court called upon to construe this ordinance shall do so in a way that does not conflict with state law while preserving the intent of the City Council in enacting this ordinance." (Italics added.) Conejo contends that the ordinance's specific use of the plural, italicized above, means that section 3 encompasses collective dispensaries such as itself. We disagree. The fundamental task of statutory construction is to ascertain legislative intent so as to effectuate the purpose of the law. (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].) In doing so, we look first to the words of the statute, which should be given their usual, ordinary, and commonsense meaning. (*Hoechst Celanese Corp. v. Franchise Tax Bd., supra,* 25 Cal.4th at p. 519.) The meaning of a statute, however, should not be determined from a single word or sentence, but instead from the words considered in the context of the legislation as a whole. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 659 [25 Cal.Rptr.2d 109, 863 P.2d 179].) Where possible, the words will be read to conform to the intent of the legislation. (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596].) Interpreted according to these rules, the italicized language establishes only that ordinance No. 08-355 should not be construed to prohibit an individual from cultivating, possessing, or using medical marijuana consistent with the CUA and the MMPA. Were we to construe section 3 to encompass the conduct of collective dispensaries, as urged by Conejo, the exception would swallow the rule and render Agoura's dispensary ban a nullity. Such a construction must be avoided. (*Webster, supra,* at p. 344; accord, *People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 544 [132 Cal.Rptr.2d 165].)

### V. *Fourth Cause of Action: Substantive and Procedural Due Process*

Ordinance No. 10-379 requires nonprofit entities to obtain a business registration permit and then categorically prohibits the city manager from approving such a permit for a medical marijuana dispensary. (AHMC, §§ 6800, 6801, 6806.) Conejo contends that because it lawfully operated as a medical marijuana dispensary prior to the enactment of No. 10-379, it has a vested property right in the continued operation of a dispensary from its leasehold. In its fourth cause of action, Conejo asserts that the permit requirements of No. 10-379 deprive it of this vested property right and thus violate "substantive and procedural due process, as well as equal protection of the law."

On appeal, Conejo does not challenge the trial court's ruling on its equal protection claim in the fourth cause of action and we, therefore, will not address it further. Conejo, though, does continue to assert that the permit requirements of ordinance No. 10-379 violate both substantive and procedural due process. We disagree.

### A. *Substantive Due Process and Vested Property Interests*

 The proper analysis of Conejo's "substantive due process" argument, we believe, is based on constitutional principles related to the "taking clauses" of the United States and California Constitutions. (See, e.g., *Hansen Brothers Enterprises, Inc. v. Board of Supervisors* (1996) 12 Cal.4th 533, 551–552 [48 Cal.Rptr.2d 778, 907 P.2d 1324] (*Hansen*).) In *Hansen*, the Supreme Court discussed the tension between local zoning ordinances and constitutional taking clauses: "A zoning ordinance or land-use regulation which operates prospectively, and denies the owner the opportunity to exploit an interest in the property that the owner believed would be available for future development, or diminishes the value of the property, is not invalid and does not bring about a compensable taking unless all beneficial use of the property is denied. [Citations.] However, if the law effects an unreasonable, oppressive, or unwarranted interference with an existing use, or a planned use for which a substantial investment in development costs has been made, the ordinance may be invalid as applied to that property unless compensation is paid. [Citations.] Zoning ordinances and other land-use regulations customarily exempt existing uses to avoid questions as to the constitutionality of their application to those uses. 'The rights of users of property as those rights

existed at the time of the adoption of a zoning ordinance are well recognized and have always been protected.' [Citation.]" (*Hansen, supra,* 12 Cal.4th at pp. 551–552.)

"A legal nonconforming use is one that existed lawfully before a zoning restriction became effective and that is not in conformity with the ordinance when [the use] continues thereafter." (*Hansen, supra,* 12 Cal.4th at p. 540, fn. 1; accord, *San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 661, fn. 10 [117 Cal.Rptr.2d 269, 41 P.3d 87].) The burden is on the party asserting the right to a nonconforming use to show the *lawful* and continuing use in place at the time the new ordinance is enacted. (*Melton v. City of San Pablo* (1967) 252 Cal.App.2d 794, 804 [61 Cal.Rptr. 29].)

Although *Hansen* and the other cases cited above address the rights of property *owners*, the principles these authorities describe apply with equal force to the rights of property *lessees* such as Conejo. (See *Livingston Rock etc. Co. v. County of L. A.* (1954) 43 Cal.2d 121, 123, 127 [272 P.2d 4]; cf. *Hansen, supra,* 12 Cal.4th at p. 540, fn. 1 ["The use of the land, not its ownership, at the time the use becomes nonconforming determines the right to continue the use."].) Although *Hansen* and the other cases also involve the impact of zoning ordinances and land use regulations on property rights rather than the impact of permit or licensing schemes, we will assume, without deciding, that the principles apply to the permit requirements of ordinance No. 10-379. We do so for two reasons: (1) Agoura does not raise this point in its opposition to Conejo's substantive due process/vested property right argument, and (2) No. 10-379's functional ban causes a diminution of Conejo's leasehold value no less than would an express ban of dispensaries.

Nevertheless, we reject Conejo's contention that ordinance No. 10-379 deprives it of a vested property right: based on the undisputed facts below, Conejo's operation of a collective medical marijuana dispensary was never a lawful use within Agoura's Manufacturing District. When Conejo began in 2006, and throughout its continued operation thereafter, "medical marijuana dispensary" was not a permitted use within the Manufacturing District or any other commercial district. (See AHMC, former §§ 9310.200, 9310.220 [now codified in §§ 9312, 9312.2].) Since it was not expressly permitted or interpreted to be similar to a permitted use, it was prohibited. (Former § 9310.210 [now codified in § 9312.1].) Such a use was therefore unlawful and could have been prosecuted as a misdemeanor or subjected to abatement

as a public nuisance before the adoption of No. 10-379. (AHMC, § 1200, subds. (a), (c).) In 2008, Agoura made express what had always been implicit: it enacted ordinance No. 08-355 and affirmatively banned medical marijuana dispensaries not only from the Manufacturing District, but from all city districts. (AHMC, § 9660, subd. C.)

■ Thus, the permit requirements of ordinance No. 10-379 do not deprive Conejo of a vested property right. Based upon the undisputed record below, Conejo's operation of a collective medical marijuana dispensary was always unlawful: first, as a use not expressly permitted by the AHMC, and later, as a use expressly banned by the AHMC. Conejo is therefore not entitled to the constitutional protections afforded property owners or lessees engaged in lawful existing nonconforming uses. (See *Melton v. City of San Pablo, supra,* 252 Cal.App.2d at p. 805.)

## B. *Procedural Due Process*

■ Procedural due process, as required by the United States Constitution, protects only those matters that may be construed as liberty or property interests. (*Mathews v. Eldridge* (1976) 424 U.S. 319, 332 [47 L.Ed.2d 18, 96 S.Ct. 893]; *Board of Regents v. Roth* (1972) 408 U.S. 564, 569 [33 L.Ed.2d 548, 92 S.Ct. 2701]; *Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1059 [114 Cal.Rptr.2d 798] (*Ryan*).) Procedural due process under the California Constitution, however, extends potentially to any statutorily conferred benefit, whether or not it can be properly construed as a liberty or property interest. (*People v. Ramirez* (1979) 25 Cal.3d 260, 263–264 [158 Cal.Rptr. 316, 599 P.2d 622].) When an individual is deprived of such a benefit, due process analysis under California law focuses not on the precise characterization of the benefit but simply on what process is constitutionally required given the governmental and private interests at issue. (*Ibid.*; *Ryan, supra,* at p. 1069.) Although procedural due process protection under California law therefore extends further than that under federal law, it still requires the deprivation of some statutorily conferred benefit before it is implicated. (*Ryan, supra,* at p. 1071; *Schultz v. Regents of University of California* (1984) 160 Cal.App.3d 768, 786 [206 Cal.Rptr. 910]; see *People v. Ramirez, supra,* at pp. 264, 266, 268.)

Conejo's procedural due process claim fails because the permit requirements of ordinance No. 10-379 do not deprive it of any statutorily conferred benefit. Conejo contends that the CUA and the MMPA grant it the right to operate a collective medical marijuana dispensary. As discussed earlier in this

opinion (pt. IV., *ante*), neither the CUA nor the MMPA creates such a right. Accordingly, we reject Conejo's procedural due process claim as a matter of law.[7]

## VI. Fifth Cause of Action: Right to Privacy

In its fifth cause of action, Conejo contends that Agoura's ban of collective medical marijuana dispensaries violates its members' rights to privacy and intimate association under the California Constitution. Again, we disagree.

■ Article I, section 1 of the California Constitution guarantees, among, other things, a right to privacy: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." One of the components of the right to privacy is freedom of association. (*White v. Davis* (1975) 13 Cal.3d 757, 774 [120 Cal.Rptr. 94, 533 P.2d 222]; accord, *City of Santa Barbara v. Adamson* (1980) 27 Cal.3d 123, 130 [164 Cal.Rptr. 539, 610 P.2d 436]; *City of Los Altos v. Barnes* (1992) 3 Cal.App.4th 1193, 1199 [5 Cal.Rptr.2d 77].)

There are three elements of a privacy violation: (1) the existence of a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) a serious invasion of that privacy interest. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39–40 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill v. NCAA*).) Legally protected privacy interests are generally of two categories: (1) interests in preventing the disclosure or misuse of sensitive information (informational privacy) and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference (autonomy privacy). (*Id.* at p. 35.) Informational privacy is the core value furthered by the Constitution's

---

[7] In its opening brief, Conejo also argues that Agoura's failure to process its 2010 business registration permit application in a timely manner and Agoura's summary rejection of its 2011 application violated procedural due process. With respect to the first contention, Conejo's argument is wholly conclusory and does not identify the statutory benefit implicated by Agoura's delayed response. It is therefore waived. (See *McComber v. Wells* (1999) 72 Cal.App.4th 512, 522 [85 Cal.Rptr.2d 376]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834].) With respect to the second contention, Conejo does identify the various AHMC sections Agoura failed to follow in its summary "counter" rejection of the 2011 application. We note, however, that had Agoura followed its own procedures, the ultimate result would have been the same: as a matter of law AHMC section 6806 mandated denial of

privacy clause. (*White v. Davis, supra,* 13 Cal.3d at p. 774; accord, *Hill v. NCAA,* at p. 35.) Whether a legally recognized privacy interest exists is a question of law. (See *Hill v. NCAA,* at p. 40.)

In its complaint, Conejo alleges that the Agoura ordinances violate its members' right to informational privacy "in connection" with the confidentiality of their medical records. Conejo has apparently abandoned this claim since it does not address this issue in any way in its opening brief. (*In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119, fn. 9 [49 Cal.Rptr.2d 339].) In any event, we agree with the court below: neither of the Agoura ordinances at issue here require disclosure of any information and the informational privacy claim is therefore without merit.

Conejo's autonomy privacy, or freedom of association, claim is likewise without merit. Conejo contends that the Agoura ordinances interfere with its members' right "to associate together in connection with the cultivation and storage of medical marijuana, as well as communicating with one another about such activity." The ordinances in no way affect the rights of Conejo's members to associate and discuss medical marijuana cultivation, storage, and use with whomever they please. What the ordinances do is prohibit Conejo, as an entity, from operating as a marijuana dispensary in Agoura, something to which, we have already decided, it has no statutory or other right.[8]

### VII. *Conejo's Remaining Causes of Action*

On appeal, Conejo does not challenge the trial court's ruling on its sixth cause of action, based upon an alleged violation of the Constitutional prohibition of ex post facto laws and laws which impair vested contract rights. We therefore do not review this part of the trial court's ruling.

Conejo's seventh and eighth causes of action seek specific equitable and statutory remedies based upon its various substantive arguments. Since we have rejected Conejo's substantive arguments for the reasons stated in this opinion, we likewise affirm the trial court's ruling on Conejo's seventh and eighth causes of action.

---

the application and any appeal of that decision allowed by the AHMC would not have changed that decision. We thus find, under the particular circumstances of this case, that any failure to follow the procedures established by the AHMC was harmless, and does not warrant reversal of the trial court's order.

[8] In this part of its opening brief, Conejo also argues that ordinance No. 10-379 violates the free speech protections of the First Amendment because it prohibits the distribution of advertising literature by businesses that have not obtained a business registration permit. (AHMC, § 6816.) This contention is not properly before us because Conejo never alleged such a claim in its complaint. (*Robinson v. Hewlett-Packard Corp.* (1986) 183 Cal.App.3d 1108, 1131 [228 Cal.Rptr. 591].) We therefore decline to address it.

## DISPOSITION

The judgment entered against Conejo on both its complaint and Agoura's cross-complaint is affirmed. Agoura is ordered to request dismissal of the cross-complaint's fifth cause of action upon filing of the remittitur. Agoura is also awarded costs on appeal.

Rubin, Acting P. J., and Flier, J., concurred.