Filed 7/29/16  Greenhouse Herbal Center v. City of LosAngeles CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GREENHOUSE HERBAL CENTER LLC, | B261909 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS131798) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Amy D. Hogue, Judge.  Affirmed.

Alan M. Goldberg for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Terry P. Kaufmann-Macias, Assistant City Attorney and Steven N. Blau, Deputy City Attorney for Defendant and Respondent.

_____

This matter is the latest in a series of lawsuits filed against the City of Los Angeles (City) over its attempts to regulate medical marijuana businesses within its borders. In its second amended complaint, Greenhouse Herbal Center LLC (Greenhouse) mounted a facial challenge to a repealed ordinance and alleged it was provided insufficient notice to register as a medical marijuana business under that ordinance. The complaint was dismissed without leave to amend, primarily on timeliness and mootness grounds. We affirm the judgment.

## PROCEDURAL BACKGROUND[1]

Greenhouse is a cooperative of patients and caregivers operating a medical marijuana dispensary on Hollywood Boulevard. Greenhouse and other medical marijuana cooperatives came about after the voters of the State of California approved Proposition 215, known as the Compassionate Use Act of 1996. The Compassionate Use Act provides immunity from prosecution under two sections of the Health and Safety Code for the possession and use of marijuana for medical purposes. (Health & Saf. Code, § 11362.5, subd. (b).) The state legislature expanded the criminal immunities set forth in the Compassionate Use Act in the Medical Marijuana Program Act. (Health & Saf. Code, § 11362.7 et seq.) Greenhouse began operation as a collective in 2006.

In 2007, the City passed Ordinance No. 179027 (the Interim Control Ordinance) banning all medical marijuana dispensaries in the City with the exception of those lawfully operating dispensaries which were established before the ordinance's effective date and which chose to register with the city clerk. Greenhouse chose to register and continue operating. The Interim Control Ordinance expired by operation of law on September 15, 2007.

---

[1] The facts are largely taken from the second amended complaint filed by Greenhouse on July 31, 2014. We also provide in this opinion a severely truncated account of the legal history surrounding medical marijuana in California. More comprehensive discussions of medical marijuana legislation may be found in *City of Riverside v. Inland Epire Patients Health and Wellness Center, Inc.* (2013) 56 Cal.4th 729, 739 and *Safe Life Caregivers v. City of Los Angeles* (2016) 243 Cal.App.4th 1029 (*Safe Life Caregivers*).

In 2010, the City passed Ordinance No. 181069 (the Grandfather Prior Registrant Ordinance), which required all collectives to register and capped the maximum number of collectives in the City at 70, to be proportionally distributed by population. (L.A. Mun. Code, former § 45.19.6.2.) Greenhouse again registered as required under the ordinance. The City then sent a letter to Greenhouse dated August 25, 2010, which informed Greenhouse it had met the requirements to register under the Grandfather Prior Registrant Ordinance and could continue to operate. The City further informed Greenhouse, "the City will now seek judicial consideration of the City Clerk's application of LAMC §45.19.6.2.C.1, through a lawsuit involving those Collectives who have been classified as ineligible to register and receive priority order. [¶] We will notify you again when the matters of eligibility and priority order are either provisionally considered or rejected by the court. Only at that time will a priority list be made available and pre-inspections will be able to commence. **Until then, you are not precluded from continuing your interim operation as a Collective as long as you comply with all other provisions of California State Law**. Nothing in this letter shall be construed as a grant of any permanent or vested right to continue operation; nor shall this letter be construed as permission to conduct activities that are otherwise illegal under state or local law." The City thereafter requested additional information from Greenhouse on December 7, 2010, to which Greenhouse timely responded. The Grandfather Prior Registrant Ordinance sunseted on June 7, 2012.

On December 10, 2010, the Superior Court issued an injunction finding portions of the Grandfather Prior Registrant Ordinance invalid. In response to the injunction, the City passed Ordinance 181530 (the Grandfather/Lottery Ordinance) on January 21, 2011, as an urgency measure. It required all collectives in operation on or before September 14, 2007, to register between February 14, 2011 and February 18, 2011, to participate in a lottery. Greenhouse did not receive notice from the City to submit or file anything in connection with the Grandfather/Lottery Ordinance. As a result, Greenhouse failed to fulfill the registration requirements under the Grandfather/Lottery Ordinance. It learned

3

of the registration requirements from other collectives who received letters dated March 7, 2011, demanding their closure.  Greenhouse did not receive a similar letter.

Greenhouse brought suit against the City on May 3, 2011, challenging the Grandfather/Lottery Ordinance.  The Grandfather/Lottery Ordinance was repealed in August 2012, during the course of the litigation.  The City subsequently passed Ordinance 182443, calling for a special election on new regulations for medical marijuana businesses.  The measure, known as Proposition D (Prop. D), was approved by the voters on May 21, 2013. (L.A. Ord. No. 182443.)  Prop. D "enact[ed] a materially new ordinance that (a) prohibits medical marijuana businesses, but (b) grants a limited immunity from the enforcement of its prohibition to those medical marijuana businesses that do not violate the restrictions set forth in this ordinance[.]"  (L.A. Mun. Code 45.19.6.)  Under Prop. D, medical marijuana businesses must be registered under both the Interim Control Ordinance and the Grandfather/Lottery Ordinance.  (*Safe Life Caregivers, supra*, 243 Cal.App.4th at p. 1037.)  Because Greenhouse never registered under the Grandfather/Lottery Ordinance in 2011, it was ineligible to operate under Prop. D.

Greenhouse filed a first amended complaint on January 31, 2014, one and a half years after the Grandfather/Lottery Ordinance sunset and one year after Prop. D came into effect.  Shortly thereafter, it filed a verified second amended complaint on July 31, 2014, alleging the following causes of action, listed in order:  (1) Declaratory and injunctive relief on the ground the Grandfather/Lottery Ordinance violated Government Code section 65858, subdivision (f);[2] (2) Declaratory and injunctive relief on the ground

---

[2]  Government Code section 65858 governs the implementation of interim ordinances as urgency measures and provides, among other things, that "upon termination of a prior interim ordinance, the legislative body may adopt another interim ordinance pursuant to this section provided that the new interim ordinance is adopted to protect the public safety, health, and welfare from an event, occurrence, or set of circumstances different from the event, occurrence, or set of circumstances that led to the adoption of the prior interim ordinance." (Gov. Code, § 65858, subd. (f).)

4

the Grandfather/Lottery Ordinance violated Government Code section 65853;[3] (3) Declaratory and injunctive relief on the ground the Grandfather/Lottery Ordinance violated equal protection; (4) Declaratory and injunctive relief on the ground the Grandfather/Lottery Ordinance violated due process rights; (5) Declaratory and injunctive relief on the ground the Grandfather/Lottery Ordinance violated the right to association; (6) Declaratory and injunctive relief on the ground the Grandfather/Lottery Ordinance impaired vested contractual rights; (7) Declaratory and injunctive relief, preliminary and permanent injunction on the ground the Grandfather/Lottery Ordinance did not apply to Greenhouse; (8) Petition for writ of administrative mandamus; (9) Misrepresentation;[4] (10) Promissory estoppel; and (11) Declaratory and injunctive relief on the ground the Grandfather/Lottery Ordinance violated due process and equal protection under Los Angeles City Charter section 251.

In addition to facial challenges against the ordinance, Greenhouse alleged the City promised, but failed, to provide it sufficient notice of the filing requirements under the Grandfather/Lottery Ordinance. Instead, the City assured Greenhouse it had fulfilled all registration requirements and it would be notified if anything more was needed. Greenhouse alleged it was "subjected to eviction activity due to the authorities pressuring Greenhouse's landlord to evict Greenhouse and notification to Greenhouse to cease its operation." Although Greenhouse did not receive a letter demanding its closure, it believed the City was "seeking to prevent Greenhouse from operating, erroneously and wrongly, with collectives that were deemed ineligible." Greenhouse made no mention of Prop. D in its verified second amended complaint.

The City demurred to the second amended complaint primarily on the ground the Grandfather/Lottery Ordinance sunseted in 2012, over a year before the second amended complaint was filed, and thus Greenhouse's challenge to it was moot. Moreover, the City

---

[3]     Government Code section 65853 outlines the manner of adoption and amendment of zoning ordinances.

[4]     Greenhouse withdrew its ninth cause of action in its opposition to the demurrer.

5

complained there was no actual controversy in that it had not closed Greenhouse and the second amended complaint acknowledged Greenhouse's continued operation. The trial court granted the demurrer without leave to amend, reasoning, among other things, that the challenge to the Grandfather/Lottery Ordinance was moot and Greenhouse had failed to state a cause of action. Greenhouse timely appealed.

## DISCUSSION

### I. Standard of Review

A demurrer tests the sufficiency of the complaint; that is, whether it states facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e); *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 841-842.) The trial court may consider all material facts pleaded in the complaint and matters of which it may take judicial notice.[5] However, it may not consider contentions, deductions or conclusions of fact or law. (Code Civ. Proc., § 430.30, subd. (a); *Moore v. Conliffe* (1994) 7 Cal.4th 634, 638.) "Where the complaint's allegations or judicially noticeable facts reveal the existence of an affirmative defense, the 'plaintiff must "plead around" the defense, by alleging specific facts that would avoid the apparent defense. Absent such allegations, the complaint is subject to demurrer for failure to state a cause of action . . . .' [Citation.]" (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 824.)

We review de novo a dismissal resulting from a demurrer. (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1038.) We also conduct an independent review of the trial court's interpretation of municipal law, including the relevant City ordinances. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683.) Plaintiffs bear the burden of proving the trial court erred in sustaining the demurrer. (*Ibid.*)

---

[5] The City moved for this court to take judicial notice of L.A. Municipal Code sections 21.01 and 21.50 relating to business tax registration certificates. Because we find these portions of the Municipal Code to be irrelevant to our analysis, the request is denied. Greenhouse also sought judicial notice of its landlord's unlawful detainer action against it, including the complaint, the answer, and the judgment. We likewise deny the request.

6

## II. Greenhouse Does Not Have Any Vested Rights Under the Compassionate Use Act

On appeal, Greenhouse contests the trial court's ruling on numerous grounds. In a 70-page opening brief, Greenhouse lists 15 different reasons the trial court erred in sustaining the demurrer, some of which were argued below and some of which were not. But, it identifies the "main issue [as] whether GH had any rights under [the Compassionate Use Act] legislation," positing "[t]he issue of vested rights is the crux of the issue on appeal."

We first dispense with this contention based on clearly applicable precedent. The California Supreme Court addressed precisely this issue in *City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729 (*City of Riverside*). There, the high court held the Compassionate Use Act and the Medical Marijuana Program Act did not preempt a city's zoning provisions declaring a medical marijuana dispensary to be a prohibited use within city limits. (*Id.* at p. 752.) The court explained these state laws did not grant a right of access to marijuana for medicinal use or override the zoning, licensing, or police powers of local jurisdictions. (*Id.* at pp. 759-760.) Thus, "[t]he sole effect of the statute's substantive terms is to exempt specified medical marijuana activities from enumerated state criminal and nuisance statutes. Those provisions do not mandate that local jurisdictions permit such activities." (*Id.* at pp. 760-761; see also *Conejo Wellness Center, Inc. v. City of Agoura Hills* (2013) 214 Cal.App.4th 1534, 1554 (*Conejo Wellness Center*) [Compassionate Use Act does not create a broad right to cultivate, distribute or otherwise obtain marijuana without hindrance or inconvenience.]; *City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1170-1171 [Compassionate Use Act did not create "'constitutional right to obtain marijuana'"].)

Having addressed the overarching theory behind Greenhouse's appeal, we now turn to the allegations contained in the second amended complaint to determine whether a cause of action has been stated. We conclude it has not and the City's demurrer was properly sustained.

7

**III.  Facial Challenges:  First through Fifth and Eleventh Causes of Action**

Greenhouse alleges facial challenges to the Grandfather/Lottery Ordinance in its first through fifth and eleventh causes of action.  We find these challenges moot.

None of the allegations address Prop. D, the ordinance in effect at the time the first[6] and second amended complaints were filed.  Instead, Greenhouse challenged the Grandfather/Lottery Ordinance, which it acknowledged was repealed.  Facial challenges to repealed laws are moot.  (*Burke v. Barnes* (1987) 479 U.S. 361, 363; *O'Neal v. Seabury* (1938) 24 Cal.App.2d 308 (*O'Neal*); *Howard Jarvis Taxpayers Assn. v. City of Los Angeles* (2000) 79 Cal.App.4th 242, 249 [taxpayer association's claim for injunctive and declaratory relief to prevent future collection of registration fee rendered moot by city's revocation of fee requirement].)  "It is well settled that when a cause of action rests upon a statute, '"the repeal of the statute destroys the right unless the right has been reduced to final judgment or unless the repealing statute contains a saving clause protecting the right in a pending litigation."'"  (*Cross v. Bonded Adjustment Bureau* (1996) 48 Cal.App.4th 266, 275 (*Cross*).)  Additionally, "'[r]epeal or modification of a statute under attack, or subsequent legislation, may render moot the issues in a pending appeal.'"  (*Jordan v. County of Los Angeles* (1968) 267 Cal.App.2d 794, 799.)

This is because it is settled that "'the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"  (*Consol. Etc. Corp. v. United A. Etc. Workers* (1946) 27 Cal.2d 859, 863 quoting from *Mills v. Green* (1895) 159 U.S. 651, 653.)  Thus, when an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief, the matter is moot.  (*Ibid.*)

---

**6**  Although the first amended complaint is not included in the record, it is undisputed the first amended complaint contained no allegations regarding Prop. D.

Case law is illustrative. In *O'Neal, supra,* 24 Cal.App.2d 308, the plaintiffs sought an injunction to prevent the county of Madera from enforcing the provisions of an ordinance regulating inspections for tuberculosis in cattle, contending the ordinance conflicted with state law on the same subject. However, the county was specifically excluded from the provisions of the state law due to insufficient funds. As a result, the county enacted the ordinance and the plaintiffs filed their suit. The matter was dismissed upon the county's demurrer. (*Id.* at p. 309.) While the matter was on appeal, the state brought the county within the law from which it had previously been excluded, abrogating the county ordinance. The court dismissed the appeal as moot. (*Id.* at pp. 311-312.)

Likewise, in *Covenant Media, Cal. v. City, Huntington Park. CA* (C.D. Cal. 2005) 377 F.Supp.2d 828, the plaintiff sign company filed an action against the City of Huntington Park challenging an ordinance regulating advertising signs. Huntington Park had denied the plaintiff's applications to display advertising signs based on this ordinance. After the plaintiff sued, the city adopted a new sign ordinance. The district court held, "[b]ecause the repeal of a statute generally demonstrates irrefutably that enforcement of the statute will not resume, '[t]he complete repeal of a challenged statute renders a request for an injunction against application of that statute moot.'" (*Id.* at p. 834.) However, the district court refused to dismiss the complaint without leave to amend because the plaintiff was entitled to seek damages from the city for the previously denied applications and had the right to amend the pleading to challenge the new sign ordinance. (*Id.* at pp. 840-842.)

The challenge to the Grandfather/Lottery Ordinance is similarly moot due to its repeal in 2012. Greenhouse's right has not been reduced to final judgment nor does the Grandfather/Lottery Ordinance contain a saving clause. (*Cross, supra,* 48 Cal.App.4th at p. 275.) There is no relief which could be granted even if we were to find the Grandfather/Lottery Ordinance invalid on one of the myriad theories advanced by Greenhouse. In actuality, the Grandfather/Lottery Ordinance has been invalid since its repeal in 2012.

9

However, Prop. D incorporates the Grandfather/Lottery Ordinance's registration requirement within its provisions.  Thus, an argument can be made that Greenhouse is challenging Prop. D by its allegations against the Grandfather/Lottery Ordinance. Greenhouse has never alleged that Prop. D is invalid due to the failures in the Grandfather/Lottery Ordinance however, the City even noted in its demurrer that the "Second Amended Complaint does not directly challenge Prop. D."

Greenhouse also fails to adequately incorporate a challenge to Prop. D on appeal. Greenhouse makes a single reference to Prop. D in its opening brief.  In a footnote, it argues, "Prop. D suffers from the same violations as the [the Grandfather/Lottery Ordinance]."  In its reply brief, Greenhouse argues that Prop. D does not change the analysis provided in the AOB because "had [Greenhouse] filed its [Notice of Intent to Register] timely per Ordinance 181530 it would not have been ordered to shut down under Prop. D."  Even if we very liberally construe these statements to mean that by challenging the Grandfather/Lottery Ordinance, Greenhouse is also challenging Prop. D, that is not the same as making an allegation in the second amended complaint.  It is Greenhouse's burden to state its case, on appeal and below.  It has failed to do so.

In any event, the challenges made by Greenhouse to the Grandfather/Lottery Ordinance do not naturally transfer to Prop. D.  For example, in the first cause of action, Greenhouse alleged the Grandfather/Lottery Ordinance was invalid because it was an interim control zoning ordinance in violation of Government Code section 65858.  Prop. D is not an interim control ordinance and Government Code section 65858, subdivision (f) does not apply to it.  Further, Greenhouse asserts due process and equal protection claims about the Grandfather/Lottery Ordinance without explaining whether and how these facial claims equally apply to Prop. D, which did not adopt the entirety of the Grandfather/Lottery Ordinance, only its registration requirement.

Neither is Greenhouse entitled to amend the complaint to allege a challenge to Prop. D.  Whether a demurrer should be sustained with or without leave to amend turns on whether "there is a 'reasonable possibility that the defect [in the dismissed complaint] can be cured by amendment.'"  (*Harrison v. City of Rancho Mirage* (2015) 243

Cal.App.4th 162, 172.) "'The burden of proving such reasonable possibility is squarely on the plaintiff.'" (*Ibid.*) Greenhouse has not—and cannot—sustain that burden. First, Greenhouse did not request to amend below nor was that argument advanced in its opening brief. Consequently, to the extent Greenhouse believes it is entitled to amend its complaint, it has forfeited that claim by not timely presenting it.[7] (*Department of Corporations v. Superior Court* (2007) 153 Cal.App.4th 916, 935.)

Even if not forfeited, Greenhouse is time-barred from amending to assert a challenge to Prop. D. Government Code section 65009, subdivision (c)(1)(B) sets a 90-day limitations period to "attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance." Upon expiration of the time limit, "all persons are barred from any further action or proceeding." (Gov. Code, § 65009, subd. (e).) Greenhouse is well past the time to challenge Prop. D.

Greenhouse attempts to circumvent the 90 day statute of limitations by characterizing Prop. D as a public safety ordinance, rather than a zoning ordinance. Under Government Code section 65850, subdivision (a), "[t]he legislative body of any county or city may, pursuant to this chapter, adopt ordinances that . . . (a) [r]egulate the use of buildings, structures, and land as between industry, business, residences, open space . . ." Prop. D obviously regulates the use of buildings, structures and land within the city by providing limited immunity for medical marijuana businesses located a certain distance from residential zones, schools and other sensitive uses, such as parks, libraries, religious institutions, and child care facilities, among other regulations. (L.A. Mun. Code, § 45.19.3.3(L) and (O).) Similar ordinances have been held to be zoning ordinances. (*See Conejo Wellness Center, supra,* 214 Cal.App.4th at p. 1548.) Further, it is presumed that the enactment of a zoning ordinance is justified under the local police power and adapted to promote the public health, safety, morals, and general welfare. (*Lockard v. Los Angeles* (1949) 33 Cal.2d 453, 460.) Therefore, Greenhouse's

---

[7] Greenhouse, for the first time, sought leave to amend in its reply brief. Issues raised for the first time in a reply brief are forfeited. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794.)

11

characterization of the ordinance as one to promote public safety does not obviate its status as a zoning ordinance.

Because Greenhouse's facial challenges to the Grandfather/Lottery Ordinance are moot, we need not reach the merits of these claims, including Greenhouse's chief complaint, whether sufficient notice was given of the registration requirements under the Grandfather/Lottery Ordinance. We also decline to address the issues raised for the first time on appeal and not argued or alleged below: Bane Act violations, invited error, and forfeiture.

## IV.    Impairment of Vested Contractual Rights:  Sixth Cause of Action

In Greenhouse's sixth cause of action for impairment of vested contractual rights, Greenhouse contends the Grandfather/Lottery Ordinance "unlawfully interferes and impairs its patient members, the landlord and Greenhouse of their respective contractual obligations." Greenhouse alleges the Grandfather/Lottery Ordinance violated Article 1, Section 10 of the United States Constitution and Article 1, Section 9 of the California Constitution, both of which prohibit bills of attainder, ex post facto laws and laws impairing the obligation of contracts. Although not alleged in the second amended complaint, Greenhouse also includes ex post facto and bill of attainder arguments in its appeal. For reasons discussed above, Greenhouse's sixth cause of action fails for mootness.

Further, Greenhouse has failed to state a cause of action under any of those theories. The Grandfather/Lottery Ordinance does not impair a vested contractual right because use of medical marijuana or operation of a medical marijuana business is not a vested right. (*City of Riverside, supra*, 56 Cal.4th at p. 753 [the Compassionate Use Act's substantive provisions created no "'broad right to use [medical] marijuana without hindrance or inconvenience'"]; *Conejo Wellness Center, supra*, 214 Cal.App.4th 1534.)

Neither is the ordinance a bill of attainder or ex post facto law. "A bill of attainder has been defined as a 'legislative act which inflicts punishment without a judicial trial'; and an ex post facto law is one which, among other things, may either aggravate a crime, make it greater than it was when committed, or which changes the punishment therefor

12

and inflicts a greater punishment than was provided for when the crime was committed." (*People v. Camperlingo* (1924) 69 Cal.App. 466, 471 quoting *Cummings v. Missouri* (1867) 71 U.S. 277, 323.) Greenhouse has failed to allege facts supporting either theory in the second amended complaint.

First, the prohibition against ex post facto laws generally embraces criminal cases only. (*Carpenter v. Pennsylvania* (1855) 58 U.S. 456, 463, *Foster v. Board of Police Commissioners* (1894) 102 Cal.483, 490.) To the extent it applies to a civil matter, the law must nevertheless impose a punishment to constitute an ex post fact law. (*Ellis v. Dept. of Motor Vehicles* (1942) 51 Cal.App.2d 753.) In *Ellis*, the court held an ordinance was not an ex post facto law when it provided that certain convictions occurring prior to the effective date of the ordinance could be considered for the purpose of suspending a driver's license. The court explained that the ordinance did not impose any punishment for past offenses. Instead, "[i]t merely directs that the applicant's past conduct, of a sort obviously germane to the question in hand, be taken into consideration in passing on his application for a driver's license and that the application can be denied when his conduct has been such that a denial would reasonably be in the public interest." (*Id.* at p. 759.) Likewise, the Grandfather/Lottery Ordinance is not an ex post facto law simply because it does not punish anyone for past offenses. Instead, it properly allows for past conduct to be taken into consideration in allowing medical marijuana businesses to continue operating. (*420 Caregivers, LLC v. City of Los Angeles* (2012) 219 Cal.App.4th 1315, 1338.)

Second, a law must also impose a punishment before it may be deemed a bill of attainder. In *Garner v. Board of Public Works* (1951) 341 U.S. 716, the court held a City Charter provision terminating the employment of city employees who had previously advocated overthrow of the government was not a bill of attainder. The court was "unable to conclude that punishment is imposed by a general regulation which merely provides standards of qualification and eligibility for employment." (*Id*. at p. 722.) Likewise, we are unable to conclude that punishment is imposed by a regulation which

13

merely provides standards of qualification and eligibility for operating a medical marijuana business.

## V.    Declaratory Relief:  Seventh Cause of Action

Greenhouse's seventh cause of action sought declaratory relief, a preliminary injunction, and a permanent injunction on the ground it is not operating a medical marijuana collective as defined under the Grandfather Prior Registrant Ordinance and the Grandfather/Lottery Ordinance because its members do not cultivate marijuana. Although this is an as-applied challenge to the Grandfather/Lottery Ordinance rather than a facial challenge, it is nevertheless moot because no relief is available.  No action has been taken against Greenhouse under the authority provided by a repealed ordinance. Therefore, no relief may be granted to Greenhouse even if we were to hold the Grandfather/Lottery Ordinance did not apply to it on these grounds.  More importantly, Prop. D clearly encompasses Greenhouse's activities since it defines a medical marijuana business as "[a]ny location where marijuana is cultivated, processed, distributed, delivered, or given away to a qualified patient, a person with an identification card, or a primary caregiver." (L.A. Mun. Code, § 45.19.6.1(A).)  Greenhouse has failed to state a claim on this basis.

## VI.    Writ of Mandate:  Eighth Cause of Action

Greenhouse seeks a writ of administrative mandamus in its eighth cause of action to compel the City "to allow Greenhouse to operate as a lawful medical marijuana collective in accordance with applicable California law and compel the admission of Greenhouse to the use and enjoyment of the rights to which Greenhouse is entitled as a medical marijuana collection, and from which greenhouse has been unlawfully precluded by [the City]."  The petition fails for the reasons discussed above:  it is moot and there exists no right or entitlement to cultivate, distribute or otherwise obtain marijuana without hindrance or inconvenience.  (*City of Riverside*, *supra,* 56 Cal.4th at pp. 759-760; *Conejo Wellness Center*, *supra*, 214 Cal.App.4th at p. 1554; *City of Claremont v. Kruse, supra,* 177 Cal.App.4th at pp. 1170-1171.)

14

## VII. Estoppel: Tenth Cause of Action

In the tenth cause of action for estoppel, Greenhouse alleges it relied to its detriment on the City's assurance that it would "notify you again when the matters of eligibility and priority order are either provisionally considered or rejected by the court." When the City did not notify Greenhouse of the new registration requirement under the Grandfather/Lottery Ordinance, Greenhouse failed to register. Due to the alleged misrepresentation, Greenhouse contends the City is estopped from using Greenhouse's failure as a basis to force its closure. We find no estoppel claim has been asserted on these facts.

The court's analysis in *Cal. Cigarette Concessions v. City of L. A.* (1960) 53 Cal.2d 865 is instructive. There, a cigarette vendor requested a refund from the city for overpayment of sales tax based on an ongoing legal challenge to the tax. When the vendor inquired about the status of its refund request, the city clerk replied, "'Your claim is based upon points included in the Belridge Oil Company suit. Since final outcome of this case is still undecided, no action can be taken by this office. Upon receipt of a final decision, we will take further action in this matter. If you have any other inquiries, let us know.'" (*Id.* at p. 869.) The vendor's attorney responded, "'I assume from your letter, that upon the final outcome of the Belridge Oil Company case, you will make a decision as to our claim. I am further assuming that no claim of defense will be made by you for lack of filing suit until that time.'" (*Ibid.*) In response, the clerk advised the attorney, "'your client would be protected best by the filing of a suit against the City within the statutory period . . . .'" (*Id.* at p. 871, italics omitted.)

When the vendor brought suit after the statute of limitations had run, the city asserted its claim was untimely. The vendor contended the city was estopped from relying on the statute of limitations due to its representations that it would do nothing until the court had made a decision on the taxpayer case. The California Supreme Court held estoppel had not been established, finding certain conditions were necessary for an estoppel: "the party to be estopped must be apprised of the facts; the other party must be ignorant of the true state of the facts; the party to be estopped must have intended that its

15

conduct be acted upon, or so act that the other party had a right to believe that it was so intended; and the other party must rely on the conduct to its prejudice." (*Cal. Cigarette Concessions v. City of L. A.*, *supra*, at p. 869.) The high court found there was nothing upon which to base an estoppel claim due, in part, to the fact there was nothing to show the city intended the vendor to rely upon any of its statements. (*Ibid.*)

There is likewise nothing in the City's letter to indicate Greenhouse could rely upon the City to advise it of any changes in the law relating to medical marijuana. Greenhouse interprets the City's letter as an assurance that it will be notified in the event of any change to its eligibility to operate. That interpretation is at odds with the actual words contained in the letter. The City merely assured Greenhouse it would "notify you again when the matters of eligibility and priority order are either provisionally considered or rejected by the court." It further advised Greenhouse, "[n]othing in this letter shall be construed as a grant of any permanent or vested right to continue operation; nor shall this letter be construed as permission to conduct activities that are otherwise illegal under state or local law." At most, the City promised to notify Greenhouse about the outcome of the cases challenging the Grandfather Prior Registrant Ordinance. There was no assurance the City would notify it of all changes to medical marijuana laws, including any new ordinances. A claim for estoppel has not been stated.

## DISPOSITION

The judgment is affirmed. The City to recover its costs on appeal.


BIGELOW, P.J.

We concur:


FLIER, J.


GRIMES, J.

16