Filed 4/17/23  Lawson v. County of Santa Cruz CA6
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STEVEN LAWSON, | H050208 |
| Plaintiff and Appellant, | (Santa Cruz County Super. Ct. No. 21CV02161) |
| v. | |
| COUNTY OF SANTA CRUZ, | |
| Defendant and Respondent. | |

Appellant Steven Lawson (Lawson) seeks a writ of mandate directing the trial court to overturn a $174,370 civil penalty imposed by the County of Santa Cruz (County) after county law enforcement cited Lawson for the unlicensed cultivation, manufacturing, and distribution of commercial cannabis.  An administrative hearing officer found that Lawson's commercial cannabis activity violated Santa Cruz County Code section 7.128.050, which addresses County licensing requirements for the cultivation, manufacture, and distribution of cannabis for commercial purposes.

On appeal, Lawson contends that the local code sections are preempted by state law regulating marijuana.  Lawson maintains that the fines imposed by the County exceed the punishment authorized by state law and violate the Eighth Amendment's restriction on excessive fines.

We affirm the judgment.

# I. FACTS AND PROCEDURAL BACKGROUND[1]

In October 2020, the County, through its sheriff's office and accompanied by personnel from the County's cannabis compliance unit and the California Department of Fish and Wildlife, executed a search warrant at Lawson's leased property in Soquel. The search revealed quantities of cannabis in various locations (totaling 32.26 pounds of flower, 32.40 pounds of biomass, and 1650 grams of concentrate), manufacturing equipment for butane hash oil, labels, containers, glass tubes, and equipment recognized by the County's cannabis licensing manager as consistent with the manufacture and distribution of cannabis products.

Lawson was cited for unlicensed commercial manufacture, distribution, and cultivation of cannabis, in violation of Santa Cruz County Code section 7.128.050, subdivisions (A), (B), and (C). The administrative citation fined Lawson $184,370. The amount was calculated according to Santa Cruz County Code section 7.128.210, subdivision (B)(3), which establishes a dollar amount for each category of product, not to exceed $500 per pound of cannabis flower, $100/pound of cannabis biomass, and $100/gram of concentrate. Lawson appealed the citation and requested an administrative hearing.

At the administrative hearing, held on May 6, 2021, Lawson, who was represented by counsel, challenged the nature of the proceeding and the assessed penalties. Lawson's counsel objected to the administrative hearing, arguing that under United States Supreme Court precedent, a person facing fines for conduct that could be classified as criminal is entitled to a trial by jury. Lawson's counsel also objected on the ground that state law limited the County's authority to collect civil penalties to the procedures and penalties

---

[1] These facts are drawn from the evidence presented at the administrative hearing on Lawson's appeal of his administrative citation and summarized in the hearing officer's decision and order. Lawson does not dispute the factual basis for the administrative decision.

specified by Business and Professions Code section 26038,[2] established as part of Proposition 64, in which voters enacted the Control Regulate and Tax Adult Use of Marijuana Act (AUMA) (Prop. 64, § 6.1, approved by voters, Gen. Elec. (Nov. 8, 2016)), now part of the Medicinal and Adult-Use Cannabis Regulation and Safety Act (MAUCRSA), codified in sections 26000 to 26260 (Stats. 2017, ch. 27 (Sen. Bill No. 94), eff. Jan. 1, 2018).[3]

The hearing officer heard testimony and considered both sides' posthearing and supplemental briefs, in which Lawson did not dispute the factual basis for the citation but argued that any penalty for violating the County ordinance was preempted by state law. As authority for his preemption argument, Lawson relied on Health and Safety Code sections 11358 and 11359 (which he asserted limited the imposition of fines to $500) and section 26038 (which he asserted limited civil penalties for unlicensed marijuana activities to three times the cost of a state license and forfeiture of the marijuana, but only through the institution of a civil action by the prosecuting authority). Lawson also argued that the amount of the fine was so disproportionate to the limits under state law that its imposition violated the excessive fines clause of the Eighth Amendment to the United States Constitution.

The County responded that its ordinance for regulating both licensed and unlicensed cannabis cultivation and other activities is authorized by state law and argued that Lawson had not demonstrated the penalty imposed was excessive. In supplemental briefing, the County further asserted that the relevant state laws expressly allow local jurisdictions to exercise local control over cannabis activities and do not limit civil penalties for local code violations.

---

[2] Unspecified statutory references are to the Business and Professions Code.
[3] Although Lawson refers to AUMA in this appeal, as he did in the administrative and trial court proceedings, MAUCRSA is the applicable state law. We summarize the relevant statutes in our analysis, part II.B.1, *post*.

3

In June 2021, the administrative hearing officer issued a written decision and order (order), rejecting Lawson's preemption and excessive fine arguments and reducing the fine amount by $10,000. The order held that state law provisions governing criminal penalties for unlawful cannabis activities (e.g., Health & Saf. Code, §§ 11358, 11359) do not impact civil penalties for unlicensed commercial cannabis activity. The order further explained, based on the language and legislative history of Proposition 64 (enacting AUMA), that section 26038 neither prohibits the County from seeking civil penalties in an administrative proceeding, nor limits the fine that may be imposed. The order also concluded, applying the "*Bajakajian* factors" (based on *United States v. Bajakajian* (1998) 524 U.S. 321 (*Bajakajian*)), that the fine did not violate the constitutional prohibition on excessive fines, as Lawson had not shown the fine was disproportionate to his culpability and the harm, including environmental harm, attributed to unlicensed cannabis activity. Lastly, the order found Lawson's first-time offender status to be a mitigating factor under the County's ordinance and reduced the amount of the fine by $10,000.

The final administrative order found that Lawson had used his property for cultivating, manufacturing, and distributing cannabis commercially, without a license, in violation of Santa Cruz County Code section 7.128.050, subdivisions (A)–(C), and after making findings on the issues raised in the administrative appeal, ordered Lawson to pay $174,370.

In September 2021, Lawson filed a petition for writ of mandate/prohibition in the trial court under Code of Civil Procedure section 1094.5 (petition). Lawson asked the trial court to order the County to vacate the administrative order. Both sides filed written briefs which largely reiterated the legal arguments they had made in the administrative hearing. Lawson argued the local ordinances authorized the imposition of fines "in excess of the amount authorized by state law for the identical marijuana related conduct" and were preempted by those laws—specifically section 26038 and Health and Safety Code

sections 11358, 11359, and 11360. Lawson also reiterated his contention that the fine was excessive under the Eighth Amendment.

The County opposed Lawson's petition. It disputed the asserted grounds for preemption, citing a 2021 appellate court decision (now pending review before the California Supreme Court), which rejected a similar preemption argument concerning criminal penalties imposed on a property owner for unlicensed cannabis activities on the premises. (See *Wheeler v. Appellate Division of Superior Court* (2021) 72 Cal.App.5th 824, 828, review granted Mar. 16, 2022, S272850 (*Wheeler*).) The County further asserted that the ordinances Lawson violated were neither duplicative of nor in conflict with the referenced state statutes, and the fine imposed were not excessive.

In May 2022, the trial court issued a written order denying the petition for writ of mandate. The court found that state law does not preempt the local ordinances, which authorized the penalties set forth in Santa Cruz County Code section 7.128.210. It also concluded that the fine imposed was supported by the administrative hearing officer's "well-reasoned analysis of the *Bajakajian* factors" and by substantial evidence in the record, and therefore did not violate the Eighth or Fourteenth Amendments.

On May 31, 2022, the trial court entered judgment denying the petition for writ of mandate and ordering Lawson to pay the $174,370 fine in administrative civil penalties. Lawson timely appealed the judgment.

## II. DISCUSSION

Lawson contends the trial court erred in denying his petition for writ of mandate, because the local ordinances were preempted by state law and the fine imposed on him was excessive under the Eighth Amendment. The County responds that state laws relating to commercial cannabis activities do not preempt the local ordinance governing civil penalties in this case and that the trial court correctly applied the standard for reviewing an excessive fine claim under the Eighth Amendment. We address each issue in turn, starting with the standard of review and applicable legal principles.

5

*A.  Applicable Standards of Review*

Code of Civil Procedure section 1094.5 governs judicial review of adjudicatory decisions by administrative agencies.  (*Akella v. Regents of University of California* (2021) 61 Cal.App.5th 801, 813 (*Akella*).)  The inquiry in such a case extends to whether the respondent to the administrative mandate petition (here, the County) "has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion."  (Code Civ. Proc., § 1094.5, subd. (b).)  An abuse of discretion is established if the respondent agency has failed to proceed "in the manner required by law, the [agency's] order or decision is not supported by the findings, or the findings are not supported by the evidence."  (*Ibid.*)  Whether the record supports the agency's findings and factual basis for its decision or order is a question of substantial evidence in light of the entire administrative record.  (*Id.*, subd. (c); *Akella*, at pp. 813–814; see *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514–515.)  However, to the extent the administrative decision involves a question of law, including the interpretation of statutes and application of judicial precedent, the reviewing court exercises independent judgment.  (*Akella*, at p. 815; *McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 921–922; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800–801 (*Ghirardo*).)

In applying this standard on appeal, "we do not 'undertak[e] a review of the trial court's findings or conclusions.  Instead, "we review the matter without reference to the trial court's actions.  In mandamus actions, the trial court and appellate court perform the same function." ' "  (*Jefferson Street Ventures, LLC v. City of Indio* (2015) 236 Cal.App.4th 1175, 1197 (*Jefferson Street*).)

With respect to Lawson's appeal from the trial court's denial of his administrative mandate petition, we agree with the County that the question of state law preemption is subject to our independent review.  The "ultimate question" in a preemption challenge is whether the ordinance conflicts with the statute.  (*Sherwin-Williams Co. v. City of Los*

6

*Angeles* (1993) 4 Cal.4th 893, 902.)  This question presents a "legal issue involving statutory construction and the ascertainment of legislative intent, which we [] review de novo."  (*Spielholz v. Superior Court* (2001) 86 Cal.App.4th 1366, 1371.)  Similarly, where the underlying facts are not in dispute, we review de novo whether the fine imposed by the County is excessive under the Eighth Amendment.  (*Ghirardo*, *supra*, 8 Cal.4th at p. 801; *Bajakajian*, *supra*, 524 U.S. at p. 336, fn. 10.)

### B.  *Preemption of Commercial Cannabis Activities*

Lawson argues that state law under AUMA created a comprehensive scheme that established limits on fines for marijuana offenses and unlicensed commercial conduct. He contends that in passing Proposition 64, voters set the civil and criminal penalties and punishment for marijuana-related conduct, including unlicensed commercial cultivation and sales, thus occupying the field and preempting punishment by local ordinance for the same conduct covered by the state statute.  (See Prop. 64, § 6.1, approved by voters, Gen. Elec. (Nov. 8, 2016).)  In support of his preemption argument, Lawson invokes the criminal penalties provided for in Health and Safety Code sections 11358, 11359, and 11360, as well as the civil penalty provisions set forth in sections 26037 and 26038.

In response, the County maintains that although Lawson cites to AUMA, the applicable state law is MAUCRSA, since it amended and consolidated the licensing schemes for medical cannabis and adult-use cannabis.  The County argues that Lawson's reference to both criminal and civil penalty schemes makes it unclear which fine limit he claims has preemptive effect in this matter, and, in any event, Lawson fails to demonstrate any preemption applies.

### 1.  Applicable Local and State Law

The County cited and ultimately fined Lawson under chapter 7.128 of the Santa Cruz County Code, governing licenses for non-retail commercial cannabis businesses. The stated purpose of the chapter is to regulate non-retail commercial cannabis business in the unincorporated areas of the County and to mitigate the negative impacts and

secondary effects of those activities. Such secondary effects include demands on law enforcement and environmental damage due to "destructive cannabis cultivation, manufacturing, and distribution activities." (Santa Cruz County Code, § 7.128.010.) The ordinance is further "not intended to conflict" but to be interpreted in a manner "compatible with Federal and State enactments and in furtherance of the public purposes that those enactments encompass." (*Ibid*.)

Lawson was found to have violated Santa Cruz County Code section 7.128.050, subdivisions (A), (B), and (C), which provide, respectively, that it is "unlawful" and a "public nuisance" for any person to "cultivate cannabis for commercial purposes" (*id*., subd. (A)) without a valid local and state license, to "manufacture cannabis products" (*id*., subd. (B)) without a valid local and state license, and to "distribute cannabis or cannabis products" (*id*., subd. (C)) without a valid local and state license. The ordinance defines in relevant part the applicable terms, including "[c]annabis cultivation," considered by the County "to be an agricultural activity," (*id*., § 7.128.030, subd. (E)), "cannabis distribution" (*id*., subd. (G)), and "cannabis manufacture" (*id*., subd. (I)). It also states the requirements and procedures to obtain licenses under the chapter for cultivation, manufacturing, and/or distribution (*id*., §§ 7.128.090–7.128.170), and the grounds for denial, suspension, or revocation of a license (*id*., § 7.128.190). It further provides that "proof of knowledge, intent, or other mental state" is not required to establish a violation. (*Id*., § 7.128.210, subd. (A).)

Regarding enforcement, the ordinance provides that violations of the chapter "shall be subject to administrative citation" and other measures, such as injunctive relief, costs of abatement or restoration, investigative costs, and attorney fees. (Santa Cruz County Code, § 7.128.210, subd. (A).) The ordinance provides that each violation of the provisions of the chapter constitutes a separate violation, deems each violation "unlawful, a public nuisance, and an immediate threat to public health, safety and welfare," and

8

authorizes fines and penalties, pursuant to Government Code section 53069.4, for violations of the chapter. (*Ibid.*)

The civil penalties for a nonlicensee who receives an administrative citation for commercial cannabis activity reflect the amounts applied in Lawson's case, including fines "not exceeding $100.00 per gram of cannabis concentrate, [¶] . . . $100 per pound of cannabis biomass, [¶] . . . [and] $500 per pound of cannabis flower." (Santa Cruz County Code, § 7.128.210, subd. (B)(3)(c)–(e).) The ordinance additionally states that the County or office of the district attorney may also pursue remedies and actions available under state and local laws for any violations associated with the unlawful cannabis activity. (*Id.*, subd. (G).)

Lawson contends that the ordinance provisions under which he was cited, Santa Cruz County Code sections 7.128.050 and 7.128.210, are preempted by state law, specifically Health and Safety Code sections 11358, 11359 and 11360, and section 26038, which he cites as AUMA. Due to subsequent statutory changes, we will refer to the relevant law as MAUCRSA.[4]

The purpose of MAUCRSA "is to establish a comprehensive system to control and regulate the cultivation, distribution, transport, storage, manufacturing, processing, and

---

[4] The legislative enactment of MAUCRSA in 2017 followed that of AUMA in 2016, pursuant to statewide voter initiative (Proposition 64). (Stats. 2017, ch. 27, (Sen. Bill No. 94), eff. Jan. 1, 2018.) Prior to AUMA, the Medical Cannabis Regulation and Safety Act (MCRSA) comprised the state regulatory framework for the licensing and enforcement of medicinal cannabis cultivation, manufacturing, retail sale, transportation, storage, delivery, and testing. AUMA established a regulatory framework for adults 21 years of age or older to legally grow, possess, and use cannabis for nonmedicinal purposes, as well as to sell and distribute cannabis through a regulated business. (Stats. 2017, ch. 27, § 1.) One purpose of MAUCRSA was to consolidate the provisions of MCRSA and AUMA into "a single regulatory structure for both medicinal and adult-use cannabis and provide for temporary licenses to those applicants that can show compliance with local requirements." (Stats. 2017, ch. 27, § 1, subd. (g); Legis. Counsel's Dig., Sen. Bill No. 94 (2017–2018 Reg. Sess.) Stats. 2017, ch. 27.)

sale of both" medicinal and adult-use cannabis and to identify "the power and duties of the state agencies responsible for controlling and regulating the commercial medicinal and adult-use cannabis industry." (§ 26000, subds. (b), (c).) It expressly dictates that its provisions "shall not be interpreted to supersede or limit existing local authority" to enforce zoning requirements or local ordinances, including "local license, permit, or other authorization requirements." (§ 26200, subd. (a)(2).)

MAUCRSA charges the administration and enforcement of cannabis regulations to a specified state department, creates a state licensing process for cannabis businesses, and imposes civil penalties for unlicensed commercial cannabis activity. (§§ 26010–26018 [administration provisions], 26030–26037 [enforcement provisions], 26038). Specifically, "A person engaging in commercial cannabis activity without a license as required by this division shall be subject to civil penalties of up to three times the amount of the license fee for each violation. Each day of operation shall constitute a separate violation of this section." (§ 26038, subd. (a)(1).) It provides that in addition to civil penalties, "criminal penalties shall continue to apply to an unlicensed person engaging in commercial cannabis activity in violation of this division." ( *Id*., subd. (g).) Furthermore, it expressly disavows any preemptive effect: "This section does not limit, preempt, or otherwise affect any other state or local law, rule, regulation, or ordinance applicable to the conduct described in subdivision (a), or otherwise relating to commercial cannabis activities." (*Id.*, subd. (h)(1).) It also specifies "[f]ailure to comply with the requirement of a local ordinance regulating commercial cannabis activity" as a basis for enforcement of disciplinary actions. (§ 26030, subd. (f).)

Unlike section 26038, which governs civil penalties for unlicensed commercial cannabis activities, the Health and Safety Code provisions cited by Lawson address criminal sanctions. Each section, in relevant part, provides for punishment "by imprisonment in a county jail for a period of not more than six months or by a fine of not more than five hundred dollars ($500), or by both that fine and imprisonment," of a

10

person over 18 years old, "who plants, cultivates, harvests, dries, or processes more than six living cannabis plants" (Health & Saf. Code, § 11358, subd. (c)), "possesses cannabis for sale" (*id*., § 11359, subd. (b)), or "sells, furnishes, administers, or gives away, or offers to . . . sell, furnish, administer, or give away, . . . any cannabis" (*id.*, § 11360, subd. (a)(2)).

Having summarized the relevant ordinances and statutes at issue, we turn to Lawson's preemption claim.

2. <u>Preemption Principles</u>

To decide whether preemption applies, we follow the California Supreme Court's analytical framework set out in *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139 (*Big Creek Lumber*), *O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061 (*O'Connell*), and *City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729 (*Inland Empire*). Our state Constitution authorizes cities and counties to enact and enforce local ordinances which are "not in conflict" with the state's "general laws." (Cal. Const., art. XI, § 7.) Otherwise valid local legislation that conflicts with state law is void. (*O'Connell*, at p. 1065; *Inland Empire*, at p. 743.)

" ' "A conflict exists if the local legislation ' "duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." ' " ' " (*Inland Empire*, *supra*, 56 Cal.4th at p. 743.) In other words, "[a] conflict causing preemption by state law can occur in three different ways: the local ordinance (1) duplicates state law; (2) contradicts state law; or (3) enters an area or field fully occupied by state law." (*Conejo Wellness Center, Inc. v. City of Agoura Hills* (2013) 214 Cal.App.4th 1534, 1552.)

Local legislation is duplicative "when it is 'coextensive' with state law." (*O'Connell*, *supra*, 41 Cal.4th at p. 1067 [providing example of local legislation that purports to impose the same criminal prohibition imposed by state law].) It is contradictory "when it is inimical to or cannot be reconciled with state law." (*Id*. at

11

p. 1068.)  It enters an area or field fully occupied by state law "in either of two situations—when the Legislature 'expressly manifest[s]' its intent to occupy the legal area or when the Legislature 'impliedly' occupies the field."  (*Ibid*.)  The Legislature's intent to occupy an area of law may be implied "when ' "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the" locality.' "  (*Ibid*.)

In cases involving local government regulation of an area traditionally subject to local government control under the grant of police power in the state Constitution, such as land use, "California courts will presume, absent a clear indication of preemptive intent from the Legislature, that such [local] regulation is *not* preempted by state statute." (*Big Creek Lumber*, *supra*, 38 Cal.4th at p. 1149; *Inland Empire*, *supra*, 56 Cal.4th at p. 743.)

The party asserting preemption has the burden to demonstrate a conflict between the local ordinance and state law.  (*Big Creek Lumber*, *supra*, 38 Cal.4th at p. 1149.)

3. Analysis

Lawson primarily contends that the County's ordinance is subject to field preemption.  He contends that voters approved Proposition 64 with the express intent and purpose to establish a "comprehensive system" (Prop. 64, § 3, approved by voters, Gen. Elec. (Nov. 8, 2016)) of legalization, regulation, and control of nonmedical marijuana and marijuana products for use by adults 21 years and older, thereby occupying the field of regulating marijuana related activities, particularly as it pertains to punishment. Lawson relies on statements in the uncodified findings and declarations, and in the ballot

12

materials presented to voters, to argue that voters signaled an intent for the law to generally reduce penalties associated with cannabis conduct, and furthermore to specify those punishments.

This argument fails on a number of grounds. Lawson's characterization of the state statutory scheme as having occupied the field of cannabis regulation is not supported by the text or stated purpose of MAUCRSA, which was in effect when the County cited Lawson under the local ordinances. That purpose is to establish a "comprehensive system" to control and regulate the cultivation, distribution, transport, storage, manufacturing, processing, and sale of both medicinal and adult-use cannabis and cannabis products. (§ 26000, subd. (b).)

It is apparent that use of the term "comprehensive" in this context does not signify an intent to occupy the field to the exclusion of local regulation. As stated in the uncodified findings and declarations accompanying MAUCRSA, the Legislature recognized the need for a system to allow state entities to implement the voters' intent to issue cannabis licenses beginning in January 2018, "while avoiding duplicative costs and inevitable confusion among licensees, regulatory agencies, and the public and ensuring a regulatory structure that prevents access to minors, protects public safety, public health and the environment, *as well as maintaining local control* . . . ." (Stats. 2017, ch. 27, § 1, subd. (g), italics added.) The Legislature thus deemed it "necessary to provide for a single regulatory structure for both medicinal and adult-use cannabis and provide for temporary licenses to those applicants that can show compliance with local requirements." (*Ibid.*)

That the Legislature intended for MAUCRSA *not* to preempt local regulations, but in fact to require "compliance with local requirements" (Stats. 2017, ch. 27, § 1, subd. (g)) as part of the state licensing scheme, is evident in various ways throughout the statute. As the Court of Appeal observed in *Wheeler*, "MAUCRSA explicitly disavows any legislative intention to occupy the field of commercial cannabis regulation, and

13

explicitly contemplates that cities and counties will also impose their own licensing requirements and other restrictions on commercial cannabis activities." (*Wheeler*, *supra*, 72 Cal.App.5th at p. 840, review granted, citing §§ 26030, subd. (f), 26200, subd. (a)(1).)

MAUCRSA expressly states that its provisions "shall not be interpreted to supersede or limit existing local authority" to enforce local zoning requirements or ordinances, including "enforcement of local license, permit, or other authorization requirements." (§ 26200, subd. (a)(2).) Recent legislative amendments to MAUCRSA have reiterated this intent in the context of civil penalty enforcement. Following amendments in 2021, section 26038, which Lawson cites as support for his preemption argument, explicitly states, "[t]his section does not limit, preempt, or otherwise affect any other state or local law, rule, regulation, or ordinance applicable to the conduct described in subdivision (a), or otherwise relating to commercial cannabis activities." (§ 26038, subd. (h)(1), formerly subd. (g), amended by Stats. 2021, ch. 530 (Assem. Bill No. 1138), § 1, eff. Jan. 1, 2022.) Amendments in 2022 added: "This section is meant to further the intent of the . . . [AUMA], which allows local governments to reasonably regulate the cultivation of nonmedical cannabis for personal use by adults 21 years of age and older through zoning and other local laws." (§ 26038, subd. (h)(2), added by Stats. 2022, ch. 56 (Assem. Bill No. 195), § 2, eff. June 30, 2022.) The conduct described in section 26038, subdivision (a), is a person engaging in unlicensed commercial cannabis activity.

We reject the suggestion that MAUCRSA, or the voters through passage of the AUMA, manifested an express intent to occupy the field or strictly limit civil penalties for unlicensed commercial cannabis activity.

Lawson's reliance on the statutory grant of authority to the county counsel (or local prosecuting agency) to institute legal proceedings for the purpose of enforcing the civil penalties provision (§ 26038, subds. (b), (e)) is misplaced. Contrary to Lawson's assertion that the statutory procedure for filing a civil action in the superior court is the exclusive means of pursuing civil penalties for unlicensed commercial marijuana activity,

14

and that voters intended to provide "very specific limits" on the amount of penalties for those activities, the statutory provisions expressly preserve local authority to adopt regulations or ordinances applicable to unlicensed commercial cannabis conduct. (§§ 26200, subd. (a)(2), 26038, subd. (h)(1), (2).) Attendant to such local regulation is the statutory allowance for the local agency to impose an administrative fine or penalty on any violation of the subject ordinance. (Gov. Code, § 53069.4, subd. (a) [providing that a local legislative body may, by ordinance, make any violation of a local ordinance subject to an administrative fine or penalty and shall set the administrative procedures governing the imposition, enforcement, collection, and administrative review of the administrative fines or penalties].)

In asserting that the $174,370 fine imposed by the County "is more severe than anything the voter[]s approved, and more severe than a 6-month jail term and a $500 fine," Lawson appears to conflate the criminal and civil penalty schemes. Lawson cites *People v. Villarino* (1955) 134 Cal.App.2d Supp. 893, for the proposition that a local ordinance conflicts with state law, even if the two are identical, due to " ' "the inevitable conflict of jurisdiction which would result from dual regulations covering the same ground." ' " (*Id.* at p. 897.) But *Villarino* involved a local ordinance imposing criminal sanctions for the same conduct covered by the state law (former Health & Saf. Code, § 11721, criminalizing the use of or addiction to narcotics). (*Villarino*, at pp. 894–895.) The Santa Cruz County Code penalty provisions for violations of the local licensing requirements for non-retail, commercial cannabis businesses in the county carry only civil sanctions and are not, in substance, criminal. (See *Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 293 (*Cohen*) [distinguishing an ordinance that is "in substance a criminal statute" attempting to prohibit conduct proscribed or permitted by state law, from a local licensing law that regulates in an area not exclusive to state law].)

Moreover, the County ordinance which Lawson was found to have violated neither duplicates nor contradicts the cited Health and Safety Code sections. In certain respects,

15

the County ordinance addresses a broader range of commercial activities than the state criminal provisions.  The County ordinance violations include packaging and storing of cannabis (under the definition of "cultivation") (Santa Cruz County Code, §§ 7.128.050, subd. (A), 7.128.030, subds. (E)), and manufacturing of cannabis products (*id.*, § 7.128.050, subd. (C), § 7.128.030, subd. (I).)  Though Lawson characterizes Health and Safety Code sections 11358, 11359, and 11360 as preempting any punishment authorized by the County ordinance, they do not address those specified areas of conduct.  Moreover, the County's ordinance concerning cultivation is specific to cultivation *for commercial purposes* without required licenses (Santa Cruz County Code, § 7.128.050, subd. (A)), whereas the criminal penalty for a person over 18 years old who "plants, cultivates, harvests, dries, or processes" cannabis (Health & Saf. Code, § 11358, subd. (c)) is based on the number of plants, not their commercial purpose.

The County's commercial cannabis licensing provisions also require "[n]o proof of knowledge, intent, or other mental state . . . to establish a violation" and deem each violation to be a public nuisance and threat to public health, safety and welfare.  (Santa Cruz County Code, § 7.128.210, subd. (A); see also *id.*, § 7.128.050, subds. (A)–(C) [making it "a public nuisance" for any person to cultivate cannabis for commercial purposes without a license, manufacture, cannabis products, or distribute cannabis].)  The strict liability nature of the County's commercial cannabis licensing scheme, intended to address the public nuisance posed by unlicensed, commercial cannabis cultivation, manufacturing, and distribution, undercuts Lawson's argument that the local regulations penalize the same conduct, or are coextensive with, the state law criminal provisions. The state criminal statutes have been interpreted to include a mens rea element as to the nature or character of the marijuana as a controlled substance.  (See *People v. Romero* (1997) 55 Cal.App.4th 147, 153 [examining origins of the knowledge requirement as to the " 'controlled substance' character of the item" so as to bring the conduct within the criminal provisions of the Health & Saf. Code]; *People v. Busch* (2010) 187 Cal.App.4th

16

150, 158 [same]; see also CALCRIM Nos. 2370 [standard jury instruction on cannabis planting/cultivating/processing in violation of Health & Saf. Code, § 11358], 2350 [standard jury instruction on sale or furnishing cannabis in violation of Health & Saf. Code, § 11360, subd. (a)], 2352 [standard jury instruction on possessing cannabis in violation of Health & Saf. Code, § 11359].)  The different mental states applicable to the County ordinance and the state criminal statutes support our conclusion that the provisions do not penalize the same conduct.

Lawson contends the circumstances here are analogous to those in *O'Connell* and in *A & B Cattle Co. v. City of Escondido* (1987) 192 Cal.App.3d 1032 (*A & B Cattle*), based on what he characterizes as the pervasiveness and comprehensive nature of the state law governing marijuana conduct and penalties.  We disagree.

In *O'Connell*, the California Supreme Court held that the state's Uniform Controlled Substances Act (UCSA) preempted a provision of Stockton's municipal code which provided for the forfeiture of vehicles used to acquire controlled substances or solicit prostitution.  (*O'Connell*, *supra*, 41 Cal.4th at pp. 1071, 1074.)  The court explained, as to the forfeiture of vehicles used in acquiring controlled substances, that the "comprehensive nature of the UCSA in defining drug crimes and specifying penalties (including forfeiture) is so thorough and detailed as to manifest the Legislature's intent to preclude local regulation."  (*Id*. at p. 1071.)  Relevant to the *O'Connell* court's determination was the UCSA's specific treatment of forfeiture.  The UCSA limits vehicle forfeiture as a penalty "only upon proof beyond a reasonable doubt of the vehicle's use to facilitate certain serious drug crimes" involving Schedule I controlled substances in specified amounts, whereas the municipal ordinance allowed vehicle forfeiture "upon proof merely by a preponderance of evidence of a vehicle's use" in much less serious crimes, including "low-grade misdemeanor[s]" not subject to vehicle forfeiture under the UCSA.  (*Ibid*., italics omitted.)  The Supreme Court interpreted "the Legislature's comprehensive enactment of penalties for crimes involving controlled substances, but

17

exclusion from that scheme of any provision for vehicle forfeiture for simple possessory drug offenses" as manifesting "a clear intent to reserve that severe penalty for very serious drug crimes," thus preempting the ordinance's incongruous forfeiture penalty. (*Id*. at p. 1072.)

In *O'Connell*, the legislative scheme governing controlled substances was not only comprehensive but also imposed limits on application of the penalty at issue, precluding vehicle forfeiture under circumstances the local ordinance would have allowed. (*O'Connell*, *supra*, 41 Cal.4th at pp. 1071–1072.)  By contrast, the state legislative scheme governing marijuana, including penalty provisions for unlicensed conduct involving commercial cannabis, contains no analogous limitations that might be interpreted as being "so thorough and detailed as to manifest the Legislature's intent to preclude local regulation."  (*Id*. at p. 1071.)  The amount of civil penalty which may be pursued in a civil action under section 26038, limited to "up to three times the amount of the license fee for each violation," where "[e]ach day of operation shall constitute a separate violation of this section" (§ 26038, subd. (a)(1)), does not preclude alternative civil penalties under local authority.  To the contrary, as already discussed, MAUCRSA expressly contemplates an arrangement that enables local regulation of commercial cannabis activities in addition to, and in conjunction with, a comprehensive state system of regulation.  (*Id.*, subd. (h)(1), (2).

Lawson's reliance on *A & B Cattle* is similarly unavailing.  The ordinance in that case declared it unlawful for retailers, without obtaining a license, to sell paraphernalia designed for use with illegal drugs, and made any violation a misdemeanor carrying criminal penalties not exceeding a $500 fine and/or six months' imprisonment.  (*A & B Cattle*, *supra*, 192 Cal.App.3d at p. 1036.)  The Legislature thereafter enacted a state law defining drug paraphernalia and penalizing the delivery, possession, or transfer of paraphernalia, by punishment not exceeding a $1,000 fine and/or one year imprisonment. (*Id*. at pp. 1036–1037.)  The appellate court held that the laws were duplicative and

18

contradictory, and further that the state law prohibiting distribution of drug paraphernalia was sufficiently comprehensive to exclude the local regulation. (*Id*. at p. 1039.) It reasoned that although the state law did not expressly regulate licensing of drug paraphernalia retailers, the Legislature's intent in enacting the law was to "totally ban the manufacture and distribution of drug paraphernalia as statutorily defined in California" and, consequently, to prohibit retail of drug paraphernalia "to the exclusion of [the] local ordinance." (*Id*. at p. 1042.) The appellate court noted, in further support of its preemption conclusion, that "the Legislature included no express language permitting local regulation on these matters as it did" in other, similar statutory schemes. (*Ibid*.)

Lawson focuses on the duplicative and contradictory penalty schemes in *A & B Cattle*, and asserts the same is true here, insofar as the County ordinance exacts punishment in the form of civil penalties, despite civil penalties being the province of section 26038. This argument ignores the relevant distinctions between overlapping criminal versus civil schemes discussed above (see, e.g., *Cohen*, *supra*, 40 Cal.3d at p. 293). It also fails to recognize the express intent of the Legislature, in establishing MAUCRSA and carrying out the purpose of AUMA, to ensure that local governments retain regulatory authority over local cannabis activities, including pertaining to land use and business licensing.

In sum, Lawson's preemption claim does not find support in the statutory text, voter or legislative intent behind the relevant state laws, or case authority. Nothing in section 26038, or in Health and Safety Code sections 11358, 11359 and 11360, indicates an express or implied intent to preempt local legislation concerning cannabis licensing and regulation of land use and nuisance activities, or to preclude civil penalties based on the local licensing and regulatory scheme. The penalties imposed by the County pursuant to Santa Cruz County Code sections 7.128.050 and 7.128.210, are not inconsistent with or duplicative of the state statutory framework, which expressly provides for concurrent,

19

local regulation of local cannabis businesses. We conclude the County ordinance and penalty provisions are valid.

### C. Eighth Amendment Limit on Excessive Fines

Lawson contends that the fine imposed by the County violates the Eighth Amendment's limit on excessive fines under the standard articulated by the United States Supreme Court in *Bajakajian* and applied to the states through the due process clause of the Fourteenth Amendment. He asserts that the fine imposed "is more than 200 times" the amount allowed by Health and Safety Code sections 11358, 11359, and 11360, for what he maintains is "identical conduct."[5] He also argues that the *Bajakajian* factors employed by the trial court are "inappropriate []" because the voters considered those same factors but elected to limit criminal fines to $500 per violation and civil penalties to three times the cost of a license per violation. Lawson thus appears to assert that the excessive fines framework under the Eighth Amendment applies but contends that the trial court erred in applying the factors courts use to evaluate excessive fines claims.

Lawson's arguments miss the mark. As with other aspects of review of the administrative mandate petition, we must decide whether the County abused its discretion by failing to proceed in the manner required by law, or in a manner not supported by the findings and the evidence in the administrative record. (*Akella*, *supra*, 61 Cal.App.5th at p. 814; Code Civ. Proc., § 1094.5, subd. (b).) Although Lawson refers to the " 'factors' employed by the trial court," the proper point of reference in a mandamus action is not the trial court's findings or conclusions, but those of the administrative agency. (*Jefferson Street*, *supra*, 236 Cal.App.4th at p. 1197.)

---

[5] Lawson variously asserts that the fine imposed by the County is "more than 200 times" the criminal penalty and, in the same argument, a "staggering *340 times* more than the maximum of a criminal fine." Lawson does not explain his method for calculating these ratios. It appears, as to the latter figure, that Lawson divides the fine imposed by a single violation of the applicable Health and Safety Code provision at a $500 penalty level ($174,370 [fine imposed] / $500 [penalty for single violation] = $348.74).

Whether the fine imposed by the County is excessive under the Eighth Amendment is a mixed question of law and fact, which we review de novo. (*Ghirardo*, *supra*, 8 Cal.4th at p. 801; *Bajakajian*, *supra*, 524 U.S. at p. 336, fn. 10.) The facts underlying imposition of the fine, which the administrative hearing officer calculated based on his findings that Lawson violated Santa Cruz County Code section 7.128.050, subdivisions (A)–(C), are not in dispute.

Both the United States Supreme Court and California Supreme Court have provided guidance in determining whether a fine is unconstitutionally excessive. The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." (U.S. Const., 8th Amend.) In *Bajakajian*, the United States Supreme Court held that civil penalties which serve as punishment are subject to the Eighth Amendment and are considered "excessive" if they are "grossly disproportional to the gravity of a defendant's offense." (*Bajakajian*, *supra*, 524 U.S. at p. 334.) According to *Bajakajian*, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." (*Ibid*.)

The California Supreme Court in *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, (*R.J. Reynolds*) recognized *Bajakajian* as the leading United States Supreme Court authority on the Eighth Amendment's prohibition against excessive fines. Our Supreme Court also explained the application of the Eighth Amendment's prohibition against excessive fines to the states through the due process clause of the Fourteenth Amendment, and the "similar protections" afforded by the state Constitution. (*Id*., at p. 728; see also *Timbs v. Indiana* (2019) ___ U.S. ___, 139 S.Ct. 682, 687.) The court identified the four considerations relevant to deciding whether a fine violates the principle of proportionality under *Bajakajian*. These are: (1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar

21

statutes; and (4) the defendant's ability to pay. (*R.J. Reynolds*, at p. 728, citing *Bajakajian*, *supra*, 524 U.S. at pp. 337–338.)

Lawson has offered no support for his contention that application of the *Bajakajian* factors in this case was "inappropriate[]" or constituted legal error. In its written order, the administrative hearing officer summarized the applicable law in assessing an excessive fine claim under the Eighth Amendment. The order addressed the four factors of culpability, relationship between harm and penalty, penalties under similar statutes, and the defendant's ability to pay. As the hearing officer found, there is no dispute about culpability. Lawson offered no defense to the County's evidence at the administrative hearing and proffered no evidence in mitigation regarding his ability to pay. Lawson has not challenged those findings on appeal.

Regarding the relationship between the harm and the penalty, the hearing officer noted that one of the County's justifications for the penalty amount was "the degree of environmental damage done by illegal cannabis activity." The order recognized other harms listed by the County, including to businesses engaged in lawful cannabis activities, to consumers who procure cannabis products that lack state-regulated safeguards, and to the County's costs to enforce its licensing regulations. The order referenced the County's showing (based on an online market report) that the penalties were not excessive given the price per pound of cannabis flower sold on the black market, and noted that Lawson had not presented any evidence to the contrary. Lastly, the hearing officer addressed "[s]imilar statutes" in which courts have rejected excessive fine challenges to "extremely large penalties."

Lawson has not challenged these findings, which in any event are supported by the administrative record, nor has he attempted to distinguish the facts underlying the penalty in this case from the authority referenced in the administrative order. Lawson has not addressed the legislative authority supporting the administrative hearing officer's

22

observations regarding the relationship between the harm and the penalty amount. (See *R.J. Reynolds*, *supra*, 37 Cal.4th at p. 728.)

The County's ordinance expressly identifies mitigation of "damage to the natural environment resulting from destructive cannabis cultivation, manufacturing, and distribution activities" as one type of harm the commercial cannabis licensing seeks to mitigate. (Santa Cruz County Code, § 7.128.010.) The state Legislature similarly identified the effects of unregulated cannabis cultivation on the environment as one of several justifications for implementing a statewide regulatory structure inclusive of compliance with local requirements. (Stats. 2017, ch. 27, § 1, subd. (g).) In arguing that the "better guiding principle" to determine whether the County's penalty was excessive should be the amount imposed above $500, Lawson focuses only on the monetary fine aspect of the criminal penalty scheme for a single violation and ignores the civil penalty scheme set forth in section 26038. Critically, Lawson does not attempt to compare the penalty under the County's ordinance to any potential penalty under section 26038, subdivision (a)(1), which authorizes civil penalties of up to three times the amount of the state license fee for each violation, per day of operation, for a person engaging in commercial cannabis activity without a license as required under the state law.[6] (*Id.*, subd. (a)(1).)

Having independently reviewed the administrative record, we agree with the trial court that the administrative order "provided a thorough and well-reasoned analysis of the

---

[6] The County, in its respondent's brief, provides a comparison to penalty amounts provided for under section 26038 by referring to representative cannabis license fees for each area of activity (cultivation, distribution, manufacturing) in which Lawson was engaged, as published on the Web site of the California Department of Cannabis Control. We do not consider these penalty amounts in our analysis. Despite the utility of the state license fees for comparing potential civil penalties under the state and local cannabis commercial licensing schemes, and the fact that the amounts may be an appropriate subject of judicial notice (Evid. Code, §§ 452, subd. (h), 459), we decline to rely on information that was not before the administrative hearing officer and considered in the order subject to the petition on review.

*Bajakajian* factors." Lawson has not carried his burden as appellant here to demonstrate error in the administrative hearing officer's civil penalty determination. We conclude the penalty imposed by the County was not grossly disproportionate to the gravity of the ordinance violations so as to render it excessive under the framework of the Eighth Amendment of the United States Constitution.

## III. DISPOSITION

The judgment denying the petition for writ of mandate is affirmed. Respondent is entitled to recover its reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____
                                        Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Wilson, J.

**H050208**
*Lawson v. County of Santa Cruz*